CYRUS F. CLARK, CHARLES F. CLARK, and D. H. CAUTHORN, Composing the Firm of CLARK AND CAUTHORN, Respondents, v. J. E. KING, Appellant.

St. Louis Court of Appeals.  Opinion Filed March 7, 1922.

1. BROKERS: Real Estate Brokers: Letter Authorizing Sale of Farm: Sufficiency. Where plaintiffs were in the real estate business, and the defendant wrote them a letter saying that he would sell his land at a certain price upon certain terms, and stated in the letter that he would pay a reasonable commission, *held* the letter was sufficient to give plaintiffs authority to sell defendant's land upon the terms stated.

2. APPELLATE PRACTICE: Verdict for Plaintiffs: Evidence: Viewed on Appeal: Rule. Where the jury found a verdict for plaintiffs, the evidence, on appeal must be gaged in the light most favorable to them.

3. BROKERS: Real Estate Brokers: Finding Purchaser Ready, Willing and Able: Evidence: Sufficiency. Evidence *held* sufficient to authorize the finding that the acts of plaintiffs resulted in finding a purchaser ready, willing and able to purchase upon the terms authorized by defendant.

4. ———: ———: Purchaser Must be Found Within Reasonable Time. Where no time is specified in which to find a purchaser, the law would require one to be found within a reasonable time.

Clark, et al. v. King.

5. ——: ——: ——: **Reasonable Time Stated.** What is a reasonable time depends upon the intention of the parties as gathered from all the facts and circumstances in evidence in the case.

6. ——: ——: **Time Not Specified: Authority May be Revoked Before Purchaser is Found.** When no time is specified the authority of real estate brokers to sell land may be revoked at any time before they have procured a purchaser.

7. ——: ——: ——: **Two Months: Reasonable Time Question for the Jury.** Where no time is specified in the authority of real estate brokers to sell land, it cannot be said that two months in which to find a purchaser under such circumstances was unreasonable as a matter of law, and *held* as to whether or not the plaintiffs had procured a purchaser within a reasonable time was one of fact, and was properly left to the jury.

8. **APPELLATE PRACTICE:** Rejecting Cumulative Evidence: **Not Reversible Error.** The rejection of cumulative evidence is not reversible error in view of testimony that was given and which was uncontradicted and practically to the same effect.

9. **BROKERS:** Real Estate Brokers: Commissions: **When Recoverable.** Where defendant authorized the plaintiffs to sell his property upon certain terms, and the plaintiffs under-took, and they produced a purchaser, ready, willing and able to buy the property upon his terms, they were entitled to recover a commission although defendant refused to sell on such terms; if he was unwilling to sell at the price stated he should have withdrawn his property from the market and notified the plaintiffs, and not permitted them to continue their efforts in his behalf.

Appeal from the Circuit Court of Audrain County.—
*Hon. E. S. Gantt,* Judge.

AFFIRMED.

*Fry & Fry* for appellant.

(1) Plaintiffs declare on an express contract and cannot recover on an implied contract. Lewis v. Slack, 27 Mo. App. 119; Egerman v. Mt. Sini, 61 Mo. 489. (2) A request is essential in all cases of contract. Plaintiffs cannot recover for voluntary services. Heimenz v. Goerger, 51 Mo. App. 586; Ballentine & Boone v. Mer-

cer, 130 Mo. App. 605; Allen's Admx. v. Richmond College, 41 Mo. 309. (3) The acts of plaintiffs were not the "procuring and inducing cause" in finding the purchaser. Mead v. Arnold, 131 Mo. App. 214; Nooning v. Miller, 178 Mo. App. 297; Park v. Culver, 169 Mo. App. 8, 11; McCrory v. Kellogg, 160 Mo. App. 597; Crain v. Miles, 154 Mo. App. 338; Brennan v. Roach, 47 Mo. App. 290; Wright v. Brown, 68 Mo. App. 577. (4) The purchaser must be procured thru the broker, or he is not the procuring cause. Low v. Paddock, 220 S. W. 969; Vandyke & Co. v. Walker, 49 Mo. App. 381. (5) Whether plaintiff's were the procuring cause was a question for the jury, and declarations of purchaser with defendant and another agent are admissible, on that issue. Mead v. Arnold, 131 Mo. App. 214; Russell v. Poor, 133 Mo. App. 723; Real Estate Co. v. Real Estate Co., 144 Mo. App. 620. (6) Where a purchaser has already seen and is fully advised as to the property and has already determined to purchase the same on information of another than the broker, the broker is not entitled to a commission. McCrory v. Kellogg, 106 Mo. App. 597; Real Estate Co. v. Real Estate Co., 144 Mo. App. 620; Newfeld v. Oren, 60 Ill. App. 350; Pitts v. Pitts, L. R. A. 1917E, 1172 and notes 1175. (7) What is a reasonable time is, when there is no dispute as to the facts, as in this case, a question of law. Turner v. Snyder, 139 Mo. App. 656.

*Clarence A. Barnes,* and *Rodgers & Buffington* for respondent.

(1) An agreement written or oral from which a contract of authority may be inferred is sufficient authority for a broker to act on. Rowland v. Progressive Investment Co., 202 S. W. 257; Real Estate Co. v. Olin, 127 Mo. App. 536; Smith v. Crane, 169 Mo. App. 707. (2) The fact that an agent is the first to negotiate with or disclose a prospective purchaser does not make such agent the procuring cause. McCann v. Bailey, 60 Mo.

App. 456; Gamble v. Grether, 108 Mo. App. 340; Hieronymus v. Atterbury, 156 Mo. App. 612; Duncan v. Hills, 55 Mo. App. 702; Sprague v. Seever, 185 Mo. App. 318; Vreeland v. Vetterlein, 33 N. J. L. 247; Wolff v. Rosenberg, 67 Mo. App. 403; Crowley v. Summerville, 70 Mo. App. 376. (3) Defendant's rejected evidence at most was cumulative and therefore harmless error. Crain v. Miles, 154 Mo. App. 350. (4) The refused instructions of which defendant complains were erroneous in form and substance and the court could not properly give them. Barth v. Railway Co., 142 Mo. 535; Christian University v. Hoffman, 95 Mo. App. 488; Scherden v. Construction Co., 108 Mo. App. 262; Hartley v. Galbreath, 127 Mo. 559.

BIGGS, C.—Plaintiffs as partners sue to recover·a commission as real estate brokers. Following the verdict of a jury there was a judgment for plaintiff's, from which defendant has appealed.

Plaintiffs were in the real estate, loan and insurance business at Mexico. The insurance feature of the business was handled exclusively by D. H. Cauthorn. The defendant was a resident of Illinois and for some years had owned a large farm in Audrain County, on which he had temporarily resided for a period of eighteen months during the years 1908 and 1909. The defendant was acquainted with the plaintiffs and had had business relations with them on several occasions. It seems Cauthorn had looked after the insurance on defendant's property, and at one time the firm had negotiated for him a loan on the property.

On April 30, 1919, Cauthorn, who was in charge of the insurance business for the firm, wrote to the defendant at his home in Illinois about hail insurance on his wheat crop, and in the letter referred to the fact that land in Audrain County was selling at $80 to $100 per acre. In answer to this letter the defendant wrote Cauthorn about the insurance and sent him a check for the

premium and then concluded his letter, which was dated May 2, 1919, as follows:

"Have been pleased to read of land transfers at higher prices. A good many farms changing hands here at $200 to $350 per acre. I have said ever since I owned the Missouri farm that it was worth $100 per acre in comparison with our land here at $250 but now since we have equal to $100 advance the Missouri farm should bring at least $150 but I would sell at $100 provided the purchaser would pay only about enough to pay off the mortgage and I would give 5 to 10 years at 5 per cent optional payments on the balance say $50,000 trust deed and pay a reasonable commission for the sale."

Under this letter the plaintiffs claim authority from the defendant to sell the land upon the terms therein stated, and base their cause of action thereon. The letter was the only communication, either verbal or written, between the parties in reference to plaintiffs selling the defendant's farm. During the month of May several letters were written by Cauthorn to the defendant about other matters, but nothing said about the sale of the farm. According to plaintiffs' evidence they took this letter as authority for them to sell and proceeded to find a buyer, and took the matter up with several parties, pricing the land at $100 per acre, and claim to have procured a buyer for the farm in the persons of Alexander Carter and Charles Bledsoe, who were ready, willing and able to purchase it and did agree to purchase it upon the terms stated by the defendant in the letter of May 2nd.

On June 30, 1919, Cauthorn stated to Charles Bledsoe that he had the farm for sale at $100 per acre. On July 1st. Bledsoe informed Cauthorn that Alexander Carter would buy the King farm at $100 per acre, and told Cauthorn to get into communication with Carter, and that he was ready to pay $5,000 as part purchase money and sign a contract. All of the parties, including the plaintiffs and Carter and Bledsoe, met at the office of the plaintiffs on the evening of July 1, 1919, and there Carter

agreed to purchase the farm upon the terms stated in defendant's letter of May 2nd, having seen the letter or having had it read to him.   Bledsoe was interested in some manner with Carter in the purchase, but exactly what interest he had does not definitely appear.   However, Carter gave to the plaintiffs his check for $5,000 payable to them as agents for defendant, which specified on its face that it was in part payment of 800 acres of land at $100 per acre.   At the time the parties did not enter into a formal contract for the sale of the land, although one was requested by Carter the contemplated purchaser.   Upon receiving the check the plaintiffs thereupon called the defendant on the telephone on the night of July 1st., when plaintiffs were then informed by the defendant that he would not sell the land at that price. The next day, July 2nd., the plaintiffs had the check certified by the bank and sent it by mail to the defendant with a letter stating that it represented part purchase money on the sale of the land which had been sold to Carter according to the terms outlined in defendant's letter of May 2nd.   The defendant thereafter on July 4, 1919, returned the check, saying that he would not sell on those terms, and specified other terms on which he would sell the property provided it was disposed of by July 10th.

It appeared from Carter's testimony that he had informed the plaintiffs, either on the evening of July 1st., or the next morning, that he had before that time offered to buy this farm at $100 per acre through Charles Harrison, another real estate agent of Mexico, and that the defendant declined to sell at that price and had withdrawn the land from the market.   This was the first information received by the plaintiffs that the land had been in the hands of other agents.   It was conceded that the defendant had never withdrawn up to that time the authority given the plaintiffs to sell the land contained in the letter of May 2nd., assuming that to be sufficient authority.

Defendant first urges that his demurrer to the evidence should have been sustained for the reason that the plaintiffs' evidence failed to show that they had been employed by the defendant to effect a sale, and further it failed to disclose that plaintiffs' efforts procured a purchaser. It is said that the letter of May 2nd, being the sole authority under which plaintiffs acted, is insufficient to give them any authority to sell defendant's land. To this we do not agree. Plaintiffs were in the real estate business, and the defendant wrote them saying that he would sell the land at a certain price upon certain terms, and stated in the letter that he would pay a reasonable commission. It is conceded that at the time defendant's land was for sale, and that he had had it in the hands of other agents at the same price. We think it can readily be inferred from this letter the defendant requested plaintiffs to procure a purchaser upon the terms stated in the letter and, in that event, he stood ready to pay a commission. In fact, defendant in his testimony in the case admitted that if the plaintiffs had sold the land at the time, it would have been all right with him, meaning right after the date of the letter.

Since the jury found a verdict for the plaintiffs, the evidence must be gaged in the light most favorable to them, and the jury were fully warranted in inferring from the letter that the defendant had authorized the plaintiffs to sell his farm upon the terms stated in the letter. It is true, as asserted by the defendant's counsel, that a request is essential in such cases and the plaintiff cannot recover for mere voluntary services. This is not such a case, for the letter is a sufficient request to comply with the law. [Rowland v. Progressive Investment Company (K. C. Court of Appeals), 202 S. W. 257.]

The question as to whether or not the plaintiffs were authorized to procure a purchaser was submitted as a fact to the jury under an instruction not complained of, and it determined that issue in favor of plaintiffs.

As to whether the acts of the plaintiff resulted in finding a purchaser, ready, willing and able to purchase upon the terms stated in the letter of May 2nd, we think the foregoing evidence sufficient to uphold the finding on behalf of plaintiffs on that question. While it is true that Carter at some previous time, the date of which is not shown, had made an offer to buy this property through Charles Harrison, another agent, at $100 per acre and which offer at that time defendant declined, which of course would indicate that Harrison was the first agent that interested Carter in the property, however plaintiffs' evidence tends to prove that they found a purchaser in the persons of Bledsoe and Carter, who were jointly interested in the contemplated purchase. Plaintiffs first talked to Bledsoe and told him the land could be bought for $100 per acre. Bledsoe thereupon caused Carter to be brought into the trade, and the evidence of plaintiffs indicates that while Carter gave his check as a part payment of the deal, Bledsoe was interested in the transaction with Carter. It was a different transaction from that between Harrison and Carter in that Bledsoe had no interest in the former transaction.

Plaintiffs' instructions required the jury to find that the plaintiffs procured a purchaser ready, able and willing to purchase upon the terms stated in the letter of May 2nd, and we think plaintiffs' evidence was sufficient to authorize a finding that the acts of plaintiffs resulted in the finding of a purchaser in the persons of Carter and Bledsoe. [Gamble v. Grether, 108 Mo. App. 340, 83 S. W. 306.]

It is further asserted that plaintiffs in any event had only a reasonable time after May 2, 1919, the date of the letter, in which to procure a purchaser, and that inasmuch as they did not procure a purchaser until July 1, 1919, that the Court should have ruled as a matter of law, that this was an unreasonable time and not a compliance with the contract. We do not think it

can be said that two months in which to find a purchaser under such circumstances was unreasonable as a matter of law. No time being specified in which to find a purchaser, the law would require one to be found within a reasonable time. This would depend upon the facts in the case and the intention of the parties. The defendant had the right at all times before plaintiffs had procured a purchaser, to revoke their authority. The Court instructed the jury that the plaintiffs had a reasonable time within which to find a purchaser, and what is a reasonable time depends upon the intention of the parties as gathered from all the facts and circumstances in evidence in the case, and if within a reasonable time as herein defined the plaintiffs failed to produce a purchaser ready, willing and able to purchase the land upon the terms mentioned in the contract, the defendant had the right to refuse to sell said land to the person produced by plaintiffs. We think the question as to whether or not the plaintiffs had procured a purchaser within a reasonable time was one of fact, and was properly left to the jury.

We think the demurrers were properly ruled.

Defendant next complains of the failure of the court to permit Carter and Charles Harrison, another real estate agent, to testify to the effect that the defendant had the farm listed with Harrison in May and June, 1919, at $100 per acre, and that the first part of June he changed his price to $125 per acre, and that Carter had made an offer, through Harrison, to defendant to buy the land at $100 per acre, but defendant refused to sell at that figure, and that Carter had so informed these plaintiffs when he undertook to buy the land on July 1, 1919. This evidence we think should have been admitted, but it cannot be said to be reversible error in view of the testimony that was given by Carter and which was uncontradicted, which was practically to the same effect. As heretofore stated, Carter gave testimony to the effect that he had informed the plaintiffs

that he had offered $100 per acre for this land through Harrison, but that the defendant had refused to sell at that price and had withdrawn the land from the market. The evidence rejected was cumulative.

Defendant assigns error in the action of the court in refusing a number of instructions offered by him. We have examined the instructions, and find no error in the action of the court in refusing them in view of our ruling that the plaintiffs made a case for the jury, and that the demurrers were properly ruled.

Defendant authorized the plaintiffs to sell his property upon certain terms and the plaintiffs undertook and they produced a purchaser ready, willing and able to buy the property upon defendant's terms. Defendant did not attempt to revoke the authority given plaintiffs until after they had found a purchaser. If the defendant had withdrawn his property from the market, or was unwilling to sell at the price stated in his letter to plaintiffs of May 2nd, he should have so notified the plaintiffs and not permitted them to continue their efforts in his behalf.

We think the judgment should be affirmed.

PER CURIAM:—The foregoing opinion of BIGGS, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J., Becker* and *Daues, JJ.,* concur.