HUGH C. KYLE v. KANSAS CITY LIFE INSURANCE COMPANY, a Corporation, and ROBERT E. LEE BUILDING COMPANY, a Corporation, Appellants.—No. 40034.—201 S. W. (2d) 912.

Division One, April 12, 1947.

Rehearing Denied, May 12, 1947.

*Ray B. Lucas* and *Jos. R. Stewart* for appellants.

*Harry L. Jacobs* and *Robert J. Coleman* for respondent.

CLARK, J.—In a suit for commission for selling real estate for defendants, plaintiff recovered a judgment for $12,500.00 with six per cent interest from date of suit. Defendants appeal.

Questions on appeal go to the sufficiency of the evidence and the correctness of plaintiff's instruction Number one.

Appellants owned the Robert E. Lee Hotel in Kansas City, Missouri. In 1939 they leased it for ten years to a corporation owned and controlled by Hutson and McCormick. The lease was negotiated by McConnell, a hotel broker. From some time in 1942 until in the autumn of 1944, McConnell, with the consent of appellants, talked with Hutson and McCormick at various times in an effort to sell them the hotel, offering it to them for $350,000.00 with a cash payment of $50,000.00, one time with a cash payment of $35,000.00, balance to be [913] carried as a loan at four per cent interest. These efforts were unsuccessful.

On October 19, 1944, respondent, a hotel broker with a wide acquaintance among hotel operators, wrote appellants that he had some select listings on sales of hotels. J. B. Thompson, employed by appellants as manager of real estate sales, answered the letter on October 31, 1944, stating that they would discuss a listing of the Lee Hotel;

that they would not give an exclusive listing, "but in case you produce a purchaser, we do pay the regular real estate commission." On November 2, 1944, respondent called on Thompson and procured the facts concerning the hotel: the terms of the existing lease, the amount of taxes which they had been paying, and the amount for which they would be willing to sell, to wit, $350,000.00, with $50,000.00 paid down and balance as a four per cent loan amortized over a period of twenty years. Respondent made notes of this information.

From here on the evidence is in sharp conflict. Respondent, who was the only witness on his behalf, testified: that shortly after he procured a listing of the hotel property he attempted to sell it to Hutson and McCormick; that he was a close friend of Hutson and had known him many years; that between November 2, 1944 and about March 1, 1945, he proposed a sale to Hutson twenty-five or thirty times and to McCormick a few times; that at first they were not interested; that later respondent told Hutson he was preparing some figures showing the advantage of ownership over renting; these were submitted to Hutson who said he was much interested in them; that Hutson requested all of respondent's papers, including the letter from Thompson referring to the listing, to send to McCormick who spent most of his time at Wichita, Kansas; that later Hutson told respondent that McCormick was also interested; that still later Hutson said he was trying to get his finances in shape so he could make a deal; that in January, 1945, respondent received an inquiry from a St. Louis company about the Lee Hotel; that he told Hutson about it and Hutson said tell them "you got a deal with me;" that Hutson did not return the papers which respondent had delivered to him until after this suit was begun. Respondent admitted that he never got an offer, a contract or down payment from Hutson or McCormick; that he did not complete the deal with them; that he never introduced them to appellants or told Thompson or any one connected with appellants' real estate department that he was negotiating with Hutson and McCormick; that he knew his listing was not exclusive and that others might be trying to sell the property at the same time he was.

Thompson, Hutson, and McCormick, testifying for appellants, each contradicted respondent in many important particulars and we find nothing in their testimony which aids respondent's case. Thompson had been trying to sell the hotel to Hutson and McCormick before it was listed with respondent and continued his efforts thereafter, seeing one or both of them every month or two. In February, 1945, Thompson again submitted a proposal, in writing, which resulted in an interview between Thompson, Hutson and McCormick. Hutson and McCormick rejected Thompson's proposal and made a counter offer to buy the property for $350,000.00, cash payment of $25,000.00 and balance to be carried on a four per cent

loan amortized over a period of twenty years. Thompson submitted this offer to appellants; it was accepted, a contract was entered into on March 10, 1945, and later the sale was completed. ·

Appellants lay great stress upon the word "produce" as used in the letter from Thompson to respondent dated October 31, 1944, wherein it was stated the regular commission would be paid "in case you produce a purchaser." There is a shade of difference between "produce" and "procure," but under facts similar to those now under consideration, where the sale was actually made, courts have rarely, if ever, recognized that difference. The general rule is that if a broker procure a purchaser who is ready, willing and able to buy on the seller's terms, the broker is entitled to his commission whether or not the sale is consummated. [Lane v. Cunningham, 171 Mo. App. 17, 153 S. W. 525.] If a sale is not consummated, a broker, in order to earn a commission must not only "procure" a ▆ purchaser, but he must "produce" him; that is, he must not only find one, but he must put him in touch with the seller. Where a sale is consummated, that fact in itself proves that the purchaser is ready, willing and able and also, of course, that he has come in contact with the seller. "Produce" has several meanings. It may mean to "exhibit," and it may mean to "cause," "originate" or "create."

Here the sale was consummated. The question is: Was there substantial evidence that the effort of the respondent was the efficient cause of the sale?

If there was such evidence the judgment must be affirmed, notwithstanding that the sale was actually completed by the seller and not by respondent. [Buhrmester v. Ind. Plumbing & H. Co. (Mo. App.), 151 S. W. (2d) 509; Vining v. Mo-La Oil Co., 312 Mo. 30, 278 S. W. 747.] If respondent "procured" the purchasers, in the sense that he influenced them to go to the seller and make the purchase, he also "produced" them although he did not introduce them to the seller. However, that he did not introduce the purchasers to the seller and did not notify the seller that he was trying to sell to these purchasers are circumstances to be considered on the question of whether respondent's efforts were the procuring cause of the sale. To show that he did procure the sale, respondent relies upon his own testimony: that Hutson said he was interested in the figures shown him by respondent; that he later said McCormick was also interested; that they retained these figures, and that Hutson told him to tell the inquirer from St. Louis "you got a deal with me." This testimony is denied by Hutson and McCormick, but for the purpose of this case we accept it as true. Against this testimony, we must weigh the fact that Hutson and McCormick never indicated a willingness to accept respondent's proposal or to make him a counter offer. They had many times rejected substantially the

same proposal, frequently made, by McConnell and Thompson. It may be that respondent's efforts contributed to bring about the sale; that his efforts, combined with that of the other two solicitors, influenced Hutson and McCormick to make an offer. That is not enough to entitle respondent to a commission. [Gamble v. Grether, 108 Mo. App. 340, 83 S. W. 306; Crain v. Miles, 154 Mo. App. 338, 134 S. W. 52.] Each of the three solicitors made the same proposal, supplemented by his own argument and figures. Only by conjecture can we, or could the jury, say that the purchasers were influenced by these arguments or figures. They operated several hotels and had operated the Lee Hotel for more than five years. Surely they knew something about rent, interest, insurance, taxes, upkeep, depreciation and other factors which determine the desirability or undesirability of ownership over renting. They also knew their own financial condition and how much of a cash payment they could make and when they could make it. They never were willing to pay $50,000.00 down. The only offer they ever made was that made to Thompson which resulted in the sale.

Appellants were not guilty of bad faith toward respondent in changing the terms of sale. Respondent knew he did not have an exclusive listing. He knew that appellants had the right to make the sale and to make it on their own terms. This is not a case where the broker introduces a prospective purchaser and the owner makes a sale by reducing the terms. Neither respondent nor the purchasers told appellants of respondent's efforts.

We do not find any substantial evidence in the record that respondent's efforts were the efficient procuring cause of the sale.

The judgment is reversed. All concur.