6

UNITED FARM AGENCY, a Corporation,
Plaintiff-Respondent

v.

W. C. COOK, Defendant-Appellant.

No. 7404.

Springfield Court of Appeals. Missouri.

Oct. 19, 1955.

Everett Frieze, Bolivar, for appellant.

Richard C. Collins, Bolivar, for respondent.

McDOWELL, Presiding Judge.

In a suit for commission for selling real estate for defendant, plaintiff recovered judgment for $225. Defendant appealed.

Plaintiff's petition alleges that it is a licensed real estate broker, engaged in the selling of real estate with its home office in Kansas City, Missouri, and branch office in Bolivar, Missouri.

That defendant, W. C. Cook, of Bolivar, in the year 1954, entered into a written agreement whereby he employed plaintiff to sell certain real estate belonging to defendant, located in Bolivar, and agreed to pay a five per cent commission for such services.

That plaintiff procured a purchaser for said real estate, one, E. D. Moine, satisfactory to defendant, and that defendant did sell said real estate to said Moine for the sum of $4500.

That said E. D. Moine was induced to purchase said real estate as a direct result of plaintiff's efforts in the course of its employment by defendant. The petition prays for a judgment for $225 and costs.

The answer admits that defendant listed with plaintiff the property described in the petition for sale as alleged but denies that defendant secured the purchaser, E. D. Moine, and that it was the procuring and inducing cause of the sale.

The cause was tried before the court and judgment rendered for plaintiff for $225, the amount sued for.

The evidence shows that one, Jack Sayre, was an employee of plaintiff as a salesman and was in charge of its office in Bolivar; that Sayre secured a written agreement from defendant wherein he listed a house and two lots in Bolivar with plaintiff for sale, as alleged in the petition, and agreed to pay a commission of five per cent if plaintiff secured a purchaser for said property and a sale was made. This written agreement, dated November 3, 1953, contained the following clause:

"I reserve the right to sell said property by my own efforts, or through agencies other than yours, and if sold, no commission or other charge will be due you; but if sold or caused to be sold to a purchaser procured through or by you, or your representative, directly or indirectly, at a price and on terms acceptable to me, I will pay you the commission as provided above."

In pursuance to this listing of defendant's property, plaintiff's agent caused copies of the agreement to be sent to the home office in Kansas City, sent letters to prospective purchasers, and advertised said property for sale. Plaintiff's agent, Sayre, showed the property to prospective buyers, among whom was one, E. D. Moine, who, later, purchased the property.

Sayre testified that on March 3, 1954, one, Mrs. Foster, operator of the Foster Hotel in Bolivar, called his office and informed him that a gentleman at the hotel wished to look at a house and buy the same; that in pursuance to this call he went immediately to the hotel; that Mrs. Foster called Moine from his room and introduced him to Sayre; that he and Moine sat down in the lobby of the hotel where Sayre told Moine about two houses, one being defendant's property; that he took Moine in his car and showed him the property; that he showed the Cook property first and afterwards showed Dale Price's house; that he made a complete showing of the property to Moine and that Moine inquired about the taxes and he took him back to his office and there ascertained what the taxes were; that he brought him back to the hotel and there talked to him about the properties for some time. He testified that he took some twenty or thirty minutes showing Moine defendant's property. He gave this testimony:

"Q. Did he make a thorough search, take a thorough look at the house? A. Yes, he did.

"Q. And did you point out to him its advantages? A. Yes, I did.

"Q. Did he show any interest in the property? A. Yes, he did.

"Q. Did he make you an offer on the property? A. No, he did not.

"Q. Do you recall what statement, if any, he made when you left him that day?

A. He told me it was the best thing that he had seen for the money.

"Q. Now, Mr. Sayre, did you ever talk with Mr. Moine about the property thereafter? A. Yes; I talked to Mr. Moine on two different occasions.

"Q. And would you just tell the Court about those two occasions? A. The first time, it was two or three days, I don't just remember, but just two or three days afterwards, I met him and asked him if he had bought a property yet, and he told me that he had not, and that happened to be in Clark Roberts' office, I was sitting in there when he came in, and being as Mr. Roberts was a real estate man, I got up and walked out. And then, two or three days later, I saw him in front of Hacker's store, he was standing on the corner, and I talked to him again and asked him if he had bought any property yet, and he said that he had not, and I asked him if he was interested in that, and he said that he was, it was the best buy that he had saw, at that time, but he wanted to do some more looking around."

The witness stated that the purchaser had made no offer and he had never told defendant that Moine was interested in the property. He testified that he learned the property had been sold and that he went to the house purchased from defendant and there found defendant and Moine in the back yard; that he asked Cook if the property was sold and he told him it had been sold to Moine; that defendant stated Moine had not told him Sayre had showed Moine the property; that the witness asked Moine there if he hadn't showed him the property and Moine said "no" and made this statement: "I never saw you before in my life, you didn't show me anything, I never saw you before in my life."

On cross examination, Sayre testified that from Moine's actions he could tell he had never seen defendant's property before at the time he showed him the property; that he showed him the outside of the house, the grounds, the inside; that the house had not been completed; that he informed

Moine that the house was to be finished and pointed out certain things that were to be done, among which were that the floors were to be sanded, the bathroom hooked up and the house was to be finished complete. He testified he told Moine that a septic tank was to be put in and the bath connected. He gave this testimony relative to Sayre's conversation with Moine two or three days later:

"Q. He said he hadn't bought anything? A. Yes. And I asked him if he was interested in the houses that I had showed him, and he said he was in the Willie Cook place, it was the best buy that he had saw, and I asked him if he was ready to buy, and he said no, that he wanted to do some more looking around.

"Q. Now, that was there in front of Hacker's? A. That's right. And he said he would let me know, or something to that effect."

Mrs. Carrie Foster, operator of the Foster Hotel, testified that she operated the same during the months of February and March, 1954; that E. D. Moine registered there during that time and stayed three or four weeks; that he told her he wanted to buy some property; that she was acquainted with Jack Sayre and called him by telephone and told him that Moine was at the hotel and wanted to buy some property; that she had often called Sayre when buyers came to the hotel. She testified that Sayre came to the hotel soon after the call and she introduced him to Moine; that they left together, in Sayre's car and later came back to the hotel. She stated she talked to Mr. Moine about Sayre showing him property and that Moine made this statement: "I believe that I like this piece of property the best of anything I have seen; it is over in that part of town", (indicating). She testified as to her conversation with Moine about the Cook property and he stated to her that the house was not finished, maybe except the septic tank. She testified that Moine discussed other properties in Bolivar and would talk to her about places he had seen.

She stated that Moine told her he had purchased the property. She gave this testimony:

"Q. Did he tell you what Agent he had bought it through? A. Yes.

"Q. And who did he buy it through? A. Hartman."

She testified that Moine said Hartman was a good friend of his; that he had bought a farm from Hartman and he did not charge him any commission; that Moine said he paid $4500 for the property.

Sam Morette testified that he owned property in Bolivar adjoining the Cook property in question; that he was repairing a fence between the properties on the day that Sayre showed defendant's property to Moine; that he was acquainted with both Sayre and Moine and that Sayre did show the property to Moine. He stated the fence was about fifty feet from the Cook house.

H. C. Hartman testified that he is engaged in the real estate business in Bolivar; that he and Moine were good friends and he had known him for two or three years; that he was acquainted with defendant and had been for twenty five years. He testified that Cook had listed the property in question with him for sale; that some time in the middle of March, Moine came to his house and he showed him the property on or about the 19th or 20th of March. He stated he made a careful showing of the house to Moine, showed him the bathroom, closets, etc., and told him that he thought defendant might take off some of the price if purchaser would let him have the back lot. He testified that Moine became interested in the place and he took him over to defendant's house, introduced him to defendant and they went back over to the house to show Moine just what defendant would do to the house; that they agreed upon the terms of sale and then the contract of sale was prepared.

On cross examination he testified that he was not feeling well and was at home;

that he and Moine were friends and he had sold Moine property before; that the sale contract was completed on the day he showed the house. Hartman admitted that he ordinarily charged five per cent commission but on this occasion he cut it to $200.

E. D. Moine testified that Hartman was the first party to show defendant's house. He testified he did not know defendant; that he bought the house through a representative of defendant who was with defendant. He stated the two were together when the deal was made; that the contract of purchase was made on the 19th day of March. He testified that on the day of purchase he thought he lived with Mr. Coffman. He denied that Sayre had ever showed him the property. He gave this testimony:

"Q. You say that he did not show it to you? A. That's right.

"Q. Did you at that time know Mr. Sayre? A. No.

"Q. Do you know whether Carrie Foster called Mr. Sayre over there and introduced you to him, or not? A. No, I don't have any recollection of her calling anybody.

"Q. But, now, while you were over there at the hotel, did you meet different real estate men there? A. Oh, yes.

"Q. Do you have any recollection of meeting Mr. Sayre there? A. No, I don't.

"Q. And do you have any recollection of going out with Mr. Sayre? A. No."

The witness testified that the first time he remembered seeing Sayre was when he came to the property that he had bought.

On cross examination, the witness testified he had no knowledge of meeting Sayre at the hotel and he denied that Sayre had ever showed him the property. He denied ever going to the office with Sayre and discussing the property. He denied seeing Sayre at the Roberts' office and denied later seeing him by Hacker's

store where Sayre had asked him if he had purchased any property. He stated he didn't know anything about it. He gave this testimony:

"Q. And did you, at any time, tell Mr. Sayre that you were still interested in the property he had shown you? A. No."

The witness testified he didn't think he was staying at the hotel on March 3, 1954; that he thought it was along some time in February when he was there. He admitted he possibly stayed there about two or three weeks. He testified he believed the first time he saw the property was on the 19th day of March; that he had prior to the purchase of the property bought a house and lot from Hartman but never a farm. He denied that he told Mrs. Foster that Mr. Hartman had sold him this property and that no commission was paid. He denied knowing Sam Morette and then stated, "Oh, yes; I know him. I couldn't recognize him, on account of the light." He stated he had known him since he purchased the property; that "He lives there just a neighbor to me, south of me."

Defendant testified that he listed the property in question for sale with plaintiff; that he sold the property on March 19th; that he did not give an exclusive listing to anyone. He testified that Sayre had never told him that he had Mr. Moine as a prospective customer and that prior to the sale he did not know Sayre claimed he had shown Moine the property. The first he knew of Sayre's claim was on April 2nd; that he had paid a commission to Hartman for selling the property. He stated he gave Hartman two $100 bills; that Moine gave him a $500 check as earnest money, which he took to the bank, cashed and got the bills that he paid Hartman. He testified that when he went to show the house to Moine, Morette was working on his fence.

In rebuttal, Morette testified that he was working on the fence when Jack Sayre showed the property and he stated he also saw Hartman showing the property.

Mrs. Foster was recalled and produced the hotel records which showed that Moine was staying there at the time Sayre claims to have shown the house.

Mrs. Clark Roberts testified that her husband was in the real estate business; that Sayre was in the office when Moine came in. She gave this testimony:

"Q. Did Mr. Moine and Mr. Sayre engage in conversation? A. Yes, they did. * * *

"Q. When was that? A. That was— well, the same time he was looking for the place; he was up in front, Mr. Sayre's car was, and Mr. Moine and Mr. Sayre were together in the car, up by the bank."

In overruling defendant's motion for a directed verdict at the close of the testimony the court made this statement:

"* * * Now, there are some peculiar angles in this case; in fact, there is some fraud, to say the least—I don't know whether it is fraud, or perjury, or what it is; it may be forgetfulness, I don't know. But it is my opinion that the Plaintiff procured this buyer; that this buyer deliberately attemped to beat the Plaintiff out of a commission. * * *"

We will refer to the appellant as defendant and to the respondent as plaintiff, being the position they occupied in the lower court.

Under defendant's first allegation of error it is contended that because plaintiff did not have the exclusive right to sell the property in question under the agreement sued on, he was required to do something more than show the property to the buyer. That he was required to bring the property owner and purchaser together and to be the inducing, procuring and proximate cause of the sale.

To establish this contention defendant cites Real Estate Enterprises, Inc., v. Collins, Mo.App., 256 S.W.2d 286.

This was an action for broker's commission on sale of realty. The facts are so

different from the facts at bar that it is hardly necessary to go into the matter. In the case cited the purchaser was attracted to the property by an advertisement of sale published by the defendant. The plaintiff and the purchaser wholly failed to reach an agreement upon the purchase price and the plaintiff notified defendant that the purchaser was no longer interested in the property. Plaintiff ceased to advertise the property for sale after purchaser had rejected the offer and, when asked by defendant why there were no further advertisements, plaintiff explained that he had "given it up as a bad deal". In other words, there was in this case an abandonment of the contract to sell.

The court, however, on page 289 of the opinion states the law governing the rights of a broker to recover a commission as follows:

"For one's services in such a matter to be the procuring cause of the sale, it is essential that his initial efforts in calling attention to the property shall have set in motion a series of events which, without a break in their continuity, and without interruption in the negotiations, eventually culminated in the sale. But where there is a definite break in the continuity of the negotiations amounting to an abandonment of the deal, and new forces thereafter enter which bring about a renewal of the negotiations and themselves become the effective cause of the sale, the initial efforts may not then be regarded as the proximate procuring cause so as to be the foundation on which to predicate a right to a commission. Young v. Stecher Cooperage Works, 259 Mo. 215, 168 S.W. 611; Westerman v. Peer Inv. Co., 197 Mo.App. 278, 195 S.W. 78; Good v. Robinson, 194 Mo.App. 453, 184 S.W. 955; Smith v. Allgier, 234 Mo. App. 392, 135 S.W.2d 43."

The same law is declared in Warren v. Fritsch, Mo.App., 14 S.W.2d 29, 31, cited. In this case the court stated:

" 'Where his claim to commission rests merely on his finding a purchaser and not upon efforts put forth whereby the latter was induced to make the purchase, the act of the agent must be the foundation of the negotiations between the purchaser and seller.' Low v. Paddock (Mo.App.) 220 S.W. 969, loc. cit. 972.

"The general doctrine is thus stated in Ruling Case Law: 'While the broker who introduces the purchaser and who is instrumental in finding him is ordinarily the procuring cause of a sale, if several are employed the evidence must go further than merely to justify a finding that the purchaser was one to whose attention the property was brought by the broker's services. Of course, if the efforts of another broker were the primary, proximate and procuring cause of the sale, the broker originally employed is not entitled to his commission. A broker who is unsuccessful in effecting a sale does not become entitled to a commission upon the success of another broker.' 4 R.C.L. 320.

"* * * The one who procures a purchaser is the one who causes the minds of the parties to meet. * * *" (Citing much authority.)

Vigeant v. Fidelity Nat. Bank & Trust Co., 236 Mo.App. 774, 158 S.W.2d 184, 189, cited, states the law quoting from Mack v. Mohler, Mo.App., 52 S.W.2d 188, 192, 193:

" 'The question then arises: Is there any evidence in plaintiff's behalf showing, or tending to show, that plaintiff was the procuring cause of the sale to Ware? * * * Cochrane relies upon nothing that he did except a statement by him to Ware in which he told Ware, he (Cochrane) had the land for sale. It is not disputed that Ware knew the land, having lived on it for 15 years when a boy and the land was owned by his father; that it was continuously on the market ever since the St. Joseph Cattle Loan Company owned it, and many efforts were made by the then owners to sell it and by persons to purchase it, the only difficulty being that the owners would not sell it in parts but insisted on selling it all at one time. * * *

" 'There is no proof that Cochrane brought the parties together or did anything to bring about the sale. The very

most that can be said of Cochrane's acts in the matter, taking everything he states at par, is that he had to do only slightly with what may, with some indulgence, be called a mere incident or link in the events occurring in the course of things proceeding to the sale. * * * The agent's act must be the procuring cause, or one of the procuring causes of the sale, before he is entitled to a commission. * * *' "

Defendant cites Barnum v. Hutchens Metal Products, Inc., Mo.Sup., 255 S.W.2d 807. There can be no question but what this case properly declares the law. On page 808 of the opinion the rule is stated:

■ "It is the general rule that a real estate broker is entitled to recover his commission on the sale of real estate if he shows himself to have been the procuring cause of the sale although the owner himself had finally consummated the sale. Of course, the rule is equally applicable whether the owner consummates the sale personally or through another broker. The owner cannot escape liability to a broker who is the procuring cause of a sale by employing another broker to consummate the transaction: and whether or not a broker is the *procuring cause* is ordinarily a question for the jury." (See cases cited.)

■ In the case at bar defendant offered evidence that the procuring cause of the sale was a real estate broker named Hartman. Under the last cited authority where the defendant introduces testimony of a third person as to how and by whom sale was procured, he vouches for credibility of such person.

Under this allegation of error plaintiff cites Kyle v. Kansas City Life Ins. Co., 356 Mo. 331, 201 S.W.2d 912, 914, wherein the court states this law:

"Here the sale was consummated. The question is: Was there substantial evidence that the effort of the respondent was the efficient cause of the sale?

"If there was such evidence the judgment must be affirmed, notwithstanding that the sale was actually completed by the seller and not by respondent. Buhrmester v. Independent Plumbing & H. Co., Mo.App., 151 S.W.2d 509; Vining v. Mo-La Oil Co., 312 Mo. 30, 278 S.W. 747. If respondent 'procured' the purchasers, in the sense that he influenced them to go to the seller and make the purchase, he also 'produced' them although he did not introduce them to the seller. However, that he did not introduce the purchasers to the seller and did not notify the seller that he was trying to sell to these purchasers are circumstances to be considered on the question of whether respondent's efforts were the procuring cause of the sale. * * *"

■ In the instant case, under the first allegation of error raised by defendant, to-wit, that the broker or plaintiff in this case was required to bring the property owner and the purchaser together in order to be the inducing and procuring or proximate cause of the sale is without merit. The Supreme Court, in the last cited case, holds that where plaintiff did not introduce the purchaser to the seller and did not notify him that plaintiff was trying to sell to the purchaser are circumstances to be considered on the question of whether respondent's efforts were the procuring cause of the sale.

■■ In the instant case the cause was tried before the court and, under section 510.310 RSMo 1949, V.A.M.S., the question of the sufficiency of the evidence requires this court to review the case upon both the law and the evidence as in suits of an equitable nature. The judgment will not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

In Scott v. Kempland, Mo.Sup., 264 S.W. 2d 349, 355, this law is stated:

"The cause having been tried to the court without the aid of a jury, we review the case upon both the law and the evidence as in suits of an equitable nature and give due regard to the opportunity of the trial

court to judge of the credibility of the witnesses."

Under the brokerage contract in the instant case it was necessary for plaintiff's services to be the procuring cause of the sale, and it was essential that his initial efforts in showing the property to the purchaser set in motion a series of events, which, without a break in the continuity, and without interruption in the negotiations, eventually culminated in the sale.

An examination of the evidence convinces this court that plaintiff's agent Sayre was the first to show the property in question to the purchaser. The evidence is overwhelming that plaintiff's agent went to the hotel, got the purchaser, took him to defendant's property and made a complete showing thereof; that he took him to his office and investigated the taxes to be paid on said property; that the purchaser, after the showing, told plaintiff's agent he was interested in the property and that it was the best buy he had seen. There is no doubt that this showing was first made on March 3, 1954. The evidence is almost conclusive that two or three days thereafter he again met the purchaser in Roberts' real estate office and talked to him as to whether or not he had made a purchase; that two or three days after that meeting he, again, talked to the purchaser down on the street in his car and the purchaser again told him he was interested in the property; that it was the best buy he knew of; that he wanted to look around some more and he would later notify him.

Now the testimony shows that on March 19th the sale was made by a real estate broker named Hartman, who was and had been for over two years a personal friend of the purchaser; had sold the purchaser other property some two years before and that this broker had been a friend of defendant for some twenty five years and had defendant's property at the time listed for sale. Defendant's testimony shows that Hartman was in bad health and was at his home; this purchaser went to Hartman's home seeking information as to this property; that Hartman then showed the property on March 19th to the purchaser, took him to the seller's home, where he and the seller together went to the property and there, on that day, entered into a contract of sale.

The purchaser, Moine, testified for defendant that he had never seen plaintiff's agent, Sayre, and that Sayre had never showed the property. This testimony was so ridiculous that the trial court, in passing upon defendant's motion for directed verdict, intimated that perjury was being committed. The testimony is so contradicted by all of the other evidence as to be unworthy of belief. This very fact indicates that Hartman's testimony, likewise, was questionable at least. He tried to leave the impression with the court that the purchaser's acts were such when he first showed him the property as to indicate he had never seen it before. The further fact, as shown by the evidence, that the purchaser went to Hartman's home and, in the space of one evening, looked at the property, went to seller's home and had the contract of purchase drawn up, would indicate that he had seen the property as testified to by plaintiff's agent and had fully made up his mind to buy it before he ever went to home of real estate broker, Hartman. We think the court was justified in finding from the evidence that plaintiff's agent, Sayre, not only first procured the purchaser but that he was the procuring cause of the sale; that his initial efforts in showing the property to the purchaser set in motion a series of events which, without a break in their continuity, and without interruption in the negotiation, eventually culminated in the sale.

■ There is no evidence in the instant case that there ever was any break in the negotiation or abandonment of plaintiff's efforts in carrying such negotiations of sale to an ultimate conclusion. The evidence further shows that the purchaser told Mrs. Foster that he bought the property through Hartman because he did not have to pay a commission. Hartman admitted that he only charged a commission of $200 which was a reduction of his ordinary commis-

14

sion. It would seem that the trial court was justified in believing that the sale to the purchaser by Hartman was merely an attempt to defeat plaintiff's right to a commission.

We find against defendant on his first allegation of error.

Under point II defendant again complains that it was incumbent upon plaintiff to bring the purchaser and defendant together or, at least, to inform the defendant of the prospective purchaser, otherwise, plaintiff was not the procuring, inducing and proximate cause of the sale where the sale was made by a third party without any knowledge that the plaintiff had shown the property to the prospective buyer.

 We passed upon this point and set out the holding of the Supreme Court on the question raised in Kyle v. Kansas City Life Ins. Co., supra. Such facts, if true, are circumstances to be considered on the question of whether plaintiff's efforts were the procuring cause of the sale. There is no merit in this contention.

Under point III, defendant complains that after showing the property to the purchaser plaintiff did not follow up his initial efforts but abandoned all further efforts to sell and made no effort thereafter to get the parties together and, not having exclusive listing, it was incumbent upon plaintiff to show that his efforts were the proximate cause of the sale.

We concede that the burden of proof was upon the plaintiff to show that his efforts were the proximate cause of the sale. We need cite no authority for this declaration of law.

Under point IV defendant states that where the plaintiff did not have an exclusive listing of the property the fact alone that he was the first to show the property to the purchaser does not of itself entitle the plaintiff to a commission where the sale was later closed by another real estate agent.

In Real Estate Enterprises, Inc., v. Collins, supra, 256 S.W.2d on page 289, the St. Louis Court of Appeals properly states the law thus:

"For one's services in such a matter to be the procuring cause of the sale, it is essential that his initial efforts in calling attention to the property shall have set in motion a series of events which, without a break in their continuity, and without interruption in the negotiations, eventually culminated in the sale. * * *"

The evidence in the instant case, in the opinion of this court, complied with that rule. We find no merit in this contention and the authorities cited under this point, most of which we have quoted from in our opinion under the first point, sustain our finding.

Judgment of the trial court affirmed.

STONE and RUARK, JJ., concur.