**CONGREGATION BETH SHALOM, a Missouri Corporation, Respondent,**

v.

**The DAVID GOTTLIEB COMPANY, Inc., a Corporation, and Gross-Johnson Realty Co., a Corporation, Appellants,**

and

**Charles L. Dixon d/b/a Dixon Realty Company, Respondent.**

No. 25584.

Kansas City Court of Appeals, Missouri.

Sept. 23, 1971.

Sheffrey, Ryder & Skeer, David Skeer, Leonard Rose, Kansas City, for appellant The David Gottlieb Co., Inc.

Roach, Roach & Roach, Francis L. Roach, Kansas City, for appellant Gross-Johnson.Realty Co.

W. Hugh McLaughlin, Kansas City, for respondent Charles L. Dixon d/b/a Dixon Realty Co.

FLOYD L. SPERRY, Special Commissioner.

Plaintiff, an incorporated religious organization, owned certain real estate located at 3400 Paseo, Kansas City, Missouri. Thereon were situated structures suitable for use by a church or religious organization, for the purpose of carrying on and exercising therein religious services. Plaintiff determined to sell the above described real estate, including the structures located thereon.

Defendants, David Gottlieb Company, Inc., and Gross-Johnson Realty Co., a corporation, were licensed, qualified and engaged in the real estate business in Kansas City, Missouri.

Defendant Charles L. Dixon, an individual, doing business as Dixon Realty Company, was a qualified, licensed real estate broker under the laws of Missouri, having in his employ James Gibson, a legally licensed real estate salesman.

Plaintiff sold its property to Christ Temple Pentecostal Church, Incorporated, a religious corporation, for the sum of $175,000.00. David Gottlieb, Gross-Johnson and Charles L. Dixon made claim against Beth Shalom for a real estate commission, all claiming to have produced the buyer of the property. Beth Shalom, as plaintiff, instituted this action and tendered into court the sum of $9,000.00, as real estate commission due from plaintiff to one of the parties defendant, as the court might find entitled thereto. Plaintiff prayed that the court hear the evidence, ascertain the party entitled to receive said fund, allow plaintiff a reasonable sum for its attorney fees in connection with this interpleader action and enter judgment in accordance with its findings.

The court found the issues in favor of Dixon; that he was entitled to receive the entire real estate commission; and that neither David Gottlieb or Gross-Johnson were entitled to receive any part of the commission. Gottlieb and Gross-Johnson appeal. The court awarded plaintiff the sum of $450.00 as attorney's fees.

We shall refer to plaintiff as Beth Shalom and to the purchaser of the property as Christ Temple. There is no dispute but that Beth Shalom is obligated to pay to the party entitled to receive it, the sum of $9,000.00 as real estate commission. No complaint is made as to the amount of $450.00 to be paid to Beth Shalom to reimburse it for its reasonable attorney fees in this case.

Beth Shalom had, for many years, owned a synagogue, together with parking facilities, located at 3400 The Paseo, Kansas City, Missouri. During the year 1964, Reverend Scott, pastor of Christ Temple Church, in Kansas City, learned that this property was for sale. Reverend Scott died in January, 1967, but his widow, who is secretary of Christ Temple and reports the minutes of business meetings, testified to the effect that the national organization of the Pentecostal Church, with which Christ Temple was affiliated, was then interested in purchasing property to be used for its headquarters. She and her husband were shown plaintiff's property by a representative of the Green Realty Co. The price at which it was offered was $750,-000.00. About a year later, the Scotts again were shown the property by Green. The price asked was $750,000.00. On that occasion the Bishop of the Diocese of the Pentecostal Church was also present. Mrs. Scott stated that the price was too high and the church gave that deal no further consideration. Mr. Dixon, one of the parties hereto, testified to the effect that in 1965, he heard that the synagogue was for sale; that he learned this fact at a real

estate meeting; that he telephoned to the officers of Beth Shalom and was told that he could show it for sale at a price of $500,000.00; that he found two prospective purchasers but, eventually, abandoned any effort to sell it.

There was evidence to the effect that, in 1967, Beth Shalom made an abortive effort, through Gottlieb, to sell the property to the A.M.E. Church; that the proposed sale price was $350,000.00; that this deal "blew up".

Mr. Gottlieb was a member and an officer of Beth Shalom. He was, for many years, chairman of its real estate board and was agent for it in buying and selling property. In the latter part of 1967 Mr. Gross, of Gross-Johnson, contacted Mr. Gottlieb. He inquired if the synagogue property was for sale. It was arranged between Gross and Gottlieb that the two firms would split the commission if they could effect a sale.

Gross-Johnson had a real estate salesman in its employ named Looney. Mr. Looney was a member of the Christ Temple Church. He learned that his church was interested in purchasing suitable property to be used for church purposes. He informed Mr. Gross of this fact and Gross arranged with Gottlieb to show the synagogue property to Reverend Talbert, who then was, and had been since January, 1967 (when Rev. Scott died) the "acting" pastor of Christ Temple. Mr. Looney contacted Reverend Talbert and, pursuant to agreement, Reverend Talbert went to the synagogue on December 13, 1967, where he was shown the property by Gottlieb, Gross and Looney. The selling price suggested by Gottlieb and Gross was $350,000.00. According to testimony offered by the two corporate defendants, Reverend Talbert stated that he would discuss the matter with officers and members of his church. Their testimony was to the effect that Talbert was invited to submit a counter-offer if the price suggested was too high.

Reverend Talbert stated that, in December, 1967, he was invited by Looney to look at the property; that he went to the site and that it was shown to him; that, when the price, $350,000.00 was mentioned, he then stated that the price was too high; he stated that he told Looney that it was "too much money", it was too high. He testified to the effect that he considered the price to be more than his church could finance. Christ Temple did not submit any offer although the evidence showed that Gross-Johnson representatives called Reverend Talbert by telephone a number of times and urged that the church submit a counter-offer. Reverend Talbert knew that the property was for sale long prior to 1967. The evidence is clear that no counter-offer was ever made by the church or its agents at that time.

There was evidence to the effect that Gottlieb wrote a letter to officials of Beth Shalom stating that he had shown the property to Christ Temple for sale.

The Dixon Realty Company had in its employ Mr. Gibson, a licensed salesman, who was a member and an officer of Christ Temple. He was also a brother-in-law of Reverend Talbert. Mr. Gibson learned that his church was interested in purchasing property to be used as a church. He had learned that the synagogue was for sale from Reverend Scott in 1966. He testified to the effect that he had heard two prices mentioned, $500,000.-00 and $750,000.00; that he had also heard that the asking price was $450,000.00; that, in April, 1968, he went to the synagogue where he was told by Mr. Krashin, plaintiff's real estate director, that the property was for sale for a price of $250,-000.00; that Mr. Krashin authorized him to show the property to prospective purchasers at a price of $250,000.00; that he discussed the matter with Reverend Talbert, then pastor pro-tem of Christ Temple. He reported to Reverend Talbert that the property was priced at $250,000.00. He stated that Reverend Talbert said, "that is better" and called a business meeting of

the church, in which meeting witness participated; that the purchase of the property for $250,000.00 was considered but no action was taken; that he showed the property to the congregation; but, later, Christ Temple countered with an offer to Beth Shalom of $175,000.00; witness conveyed this offer to Beth Shalom; that, thereafter, witness received a counter-offer from plaintiff of $210,000.00, in writing, which he presented to his church board; that a formal purchase offer of $175,000.00 was finally made by Christ Temple; that he negotiated with plaintiff's representative regarding details of the contract; that, eventually, he submitted a contract from Beth Shalom to his church, which was accepted and signed; that it was later signed by plaintiff.

■ One reason urged for reversal, by appellants, is that Mr. Gibson, who carried on the negotiations which finally culminated in a sale of the property by Beth Shalom, was a member of the board of Christ Temple, which board had control of business matters of this kind; that plaintiff was not informed of Gibson's dual interest in the negotiations and that he was, in fact, acting for Christ Temple and not for Beth Shalom. We rule that Gibson's relationship to the purchasing church is not material here because the officers of Beth Shalom had notice of Gibson's relationship to Christ Temple when they received the contract which had been executed by the buyer, and not yet by the seller. Gibson was one of the signers of that contract. Beth Shalom signed and executed the contract thereafter. Furthermore, plaintiff has made no complaint of this matter. Gottlieb and Gross-Johnson have no standing to complain on this ground.

■ The sole question for determination here is: Was Dixon Realty Company the procuring cause of the sale? In Kyle v. Kansas City Life Ins. Co., 356 Mo. 331, 201 S.W.2d 912, 914, it was held that, since a sale had been consummated, the only question presented was whether there was substantial evidence tending to prove that the effort of respondent was the procuring cause of the sale.

According to the undisputed evidence, Beth Shalom had been trying to sell this property since 1964. It had been priced at $750,000.00, $500,000.00, $450,000.00 and $350,000.00. Gottlieb and Gross-Johnson had showed it to Reverend Talbert, priced at $350,000.00. It had been shown to Reverend Scott, former pastor of Christ Temple, on two occasions, prior to this occasion. Mr. Dixon had heard, in 1965, at a (public?) real estate meeting that the property was for sale. The A.M.E. Church had negotiated for its purchase. The evidence is to the effect that plaintiff was eager to sell it.

When it was shown to Reverend Talbert, he stated, then and there, that it was too much. He later told Looney, who had invited him to view it, that the price was too high. He stated that his congregation could not finance it. Appellants did not seek a lower price from plaintiff, nor did they offer it to Christ Temple at a lower price. After several months, Mr. Gibson, who had two other possible customers for church property and who had heard that this property was for sale, personally called at the synagogue and discussed it with Mr. Krashin, the official who then had the matter in charge. He was authorized to show it, at a price of $250,000.00. He reported these facts to Reverend Talbert who evinced an interest, *at that price,* and called a church meeting to consider it. Mr. Gibson attended the meeting and placed the proposed deal before the congregation. He also personally showed the property to the congregation. The church offered $175,000.00. Gibson submitted that offer to plaintiff and returned to his church with a counter-offer of $175,000.00. Gibson and Mr. Shanberg, acting for plaintiff, worked out the full details of a contract which was, eventually, signed and executed by both parties to the sale.

In this case there never was an exclusive contract to any one to sell the property.

However, Dixon Realty was authorized to obtain a buyer. Christ Temple Church had shown no interest in buying at $350,000.00, but, when Dixon offered a price of $250,000.00, Reverend Talbert and his congregation immediately were interested and made a counter-offer which was eventually accepted. We hold that Dixon Realty was the agent which procured and produced the buyer in this case.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by FLOYD L. SPERRY, Special Commissioner, is hereby adopted as the opinion of the Court.