LEE C. RICHARDS, INC.,
Plaintiff-Appellant,

v.

Walter J. BREWER and Bessie Brewer,
his wife, Defendants-Respondents.

No. 36524.

Missouri Court of Appeals,
St. Louis District,
Division One.

Feb. 22, 1977.

Lloyd E. Eaker, Clayton, for plaintiff-appellant.

Dewey S. Godfrey, Jr., St. Louis, for defendants-respondents.

PER CURIAM:

Plaintiff appeals from an adverse judgment entered by the circuit court of St. Louis County, sitting without a jury, denying its prayer for the recovery of a brokerage commission allegedly earned under an exclusive real estate sales contract. Because the trial court found that plaintiff failed to do all things necessary to effectuate a sale, during the contract period, by not disclosing the name of the defendant to the buyer, it entered judgment for defendant on the theory of an equitable estoppel. We reverse with directions to the trial court to enter judgment for the plaintiff.

In *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), our Supreme Court, in interpreting Rule 73.01 for the standard of review of nonjury cases, mandated that an appellate court will sustain the decree or judgment of a trial court unless there is no substantial evidence to support, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Applying these criteria to the instant case, we hold that the trial court's judgment not only erroneously declared the law but also found no support by substantial evidence.

For clarity we set forth that evidence which, in our view, is dispositive of the case.

On August 8, 1972, defendants entered into a six-month exclusive sales contract with the plaintiff to sell a one-acre lot in St. Louis County for $18,750. The contract provided:

".    .    . If within six months after date of this listing said agent shall produce a purchaser ready, willing and able to purchase for the above price, or if said property shall be contracted by us to be sold to or exchanged with any person procured either by the undersigned

Agent, or by us, or by any other person, or if within an additional term of two months the property is contracted to be sold or exchanged with anyone contacted by said Agent within the first period, we will pay said Agent a commission. . . ."

Lee Richards, President of Lee Richards, Inc., then listed the property with Resco, a real estate service. Ellen Kennedy, a real estate broker with Alice Blake, Inc., saw the listing and showed the property to Mr. and Mrs. Robert Scales, the prospective purchasers, and also Mr. Ralph Scales, the brother of Mr. Robert Scales. The Scales made an offer of $10,000 for the lot.

Ellen Kennedy conveyed this to Lee Richards who conveyed it to the Brewers. The Brewers rejected this as "ridiculously low" and made a counter-offer of $17,500. When confronted with the offer of $10,000 the Brewers asked Richards who the potential purchasers were but he refused to tell them. The counter-offer was conveyed to the Scales who rejected it and sought a meeting with the property owners. There is a conflict of testimony at this point: Ralph Scales claimed he made the request to meet to Ellen Kennedy and he never spoke with Mr. Richards. Robert Scales also testified he had no dealings with Mr. Richards. Lee Richards claimed he spoke with a Mr. Scales (he did not remember which one) and although he refused the request for a personal meeting, he offered to convey another figure to the Brewers. Richards could not recall whether he told the Brewers of the Scales' request to meet with them. When their request to meet with the property owners was denied, the Scales asked Ellen Kennedy to return the earnest money and contract, which she did.

Ralph Scales saw the Brewers' name on the counter-offer of $17,500 and by looking through the tax records at the courthouse obtained their address. Approximately two and one-half months after the Scales requested the return of their earnest money and contract, Ralph Scales contacted the Brewers and negotiations resumed. On March 7, 1973, the Scales and Brewers entered into a contract for the sale of the property for the consideration of $16,500. This was seven months after the Brewers entered into the exclusive listing contract with Lee Richards, Inc.

■ The plaintiff's claim is that he fulfilled his contractual obligations and it appears that he has. Under the terms of the contract, Richards would recover a commission if the Brewers' property was sold within the six-month contractual period to anyone contacted by Richards, the Brewers, or "any other person" or, if the property was sold within an additional two months to someone "contacted" by Richards during the six-month period. It cannot be denied that the contact made with the Scales by Richards and his subagent, Ellen Kennedy, was sufficient to collect a commission. Ellen Kennedy informed the Scales of the availability of the property for sale, showed the property to them, and relayed their offer to Richards. This offer was rejected by the Brewers who made a counter-offer which Ellen Kennedy presented to the Scales. Perhaps the best indication that the Scales were "contacted" is the fact that they purchased the property, *Kyle v. Kansas City Life Ins. Co.,* 356 Mo. 331, 201 S.W.2d 912, 914 (Mo.1947).

Moreover, Richards does not lose his commission because Ellen Kennedy, his subagent, showed the property to the Scales and negotiated directly with them, 12 Am. Jur.2d, Brokers, § 190. Nor does Richards lose his commission because the Brewers and Scales completed the negotiations without his services. Under the contract, for Richards to earn his commission after the six months had expired, it was only necessary that the sale be to someone contacted by Richards; it does not matter that the parties reached an agreement by themselves.

However, the trial judge apparently found that Richards' contractual duties included a duty to bring the parties into personal contact and because Richards had not done so, he had not performed all of his contractual obligations. We feel, however, that the trial judge misread the contract.

The contract between the Brewers and Lee Richards did not require a personal contact. Rather, it stated: ". . . or if within an additional term of two months the property is contracted to be sold or exchanged with anyone contacted by said Agent within the first period. . . ." (Emphasis added.) It is impossible to read the above language as requiring a personal contact between the parties. Plaintiff, therefore, sufficiently demonstrated performance of all that was required of him under the express terms of the contract.

The only theory which could support the defendant's claim of estoppel is that Richards breached his general fiduciary duty as an agent. This theory was not argued by defendants nor explicitly relied upon by the judge. Arguably, placing the parties in personal contact may be required under this duty. It has been stated as a general rule that the broker has a duty to disclose the name of the prospective purchaser when so requested by the principal, 12 Am.Jur.2d, Brokers, § 89. The requirement of disclosure must, however, be read in the context of materiality of the disclosure and a showing of prejudice, see *King v. Pruitt,* 365 Mo. 823, 288 S.W.2d 923, 925 (1956); *United Farm Agency v. W. C. Cook,* 283 S.W.2d 6, 14 (Mo.App.1955); Annot., 2 ALR3d 1119 (1965).

In the present case, the non-disclosure appears neither material nor prejudicial. In *King v. Pruitt,* supra, the failure to disclose was considered material because there was evidence that the agent's principal, the seller, if she had known the buyer's identity might not have sold at all or sold only at a higher price, *id.* 288 S.W.2d at 925. The fact that the Brewers eventually sold the property to the Scales at a negotiated price suggests that the non-disclosure was immaterial. The delay and added costs to the Brewers allegedly stemming from Richards' refusal to bring the parties together does not bar Richards from recovery of the commission. Richards refused to disclose to the Brewers the identity of the potential purchasers but this refusal was not the cause of the delay in negotiations. Rich-

ards did agree to and did communicate the Brewer's counter-offer. The delay in negotiations stems from the Scales' reaction to Richards' refusal to arrange a meeting. Richards had no obligation to arrange such a meeting since he was not the Scales' agent. Although it is not exactly clear what Richards' motive was for refusing to allow the parties to meet (he indicated that he thought the parties were so far apart in their offers it would be pointless for them to meet), it is clear that he had no legal duty to bring them together. The defendants, therefore, have not met their burden of proving a ground for equitable estoppel by "clear and satisfactory evidence," *Peerless Supply v. Industrial Plumbers,* 460 S.W.2d 651, 666 (Mo.1971).

Arguably, defendants' claim of estoppel might be premised on Richards' general fiduciary duty ". . . *not* to do any act which makes the transaction more difficult or burdensome for his employer or which endangers the transaction. . . ." *Herb Tillman v. Sissel,* 348 S.W.2d 819, 824 (Mo.App.1961). There are the factual questions of whether Richards' refusal to bring the parties together and Kennedy's return of Scales' earnest money made the negotiations sufficiently more burdensome to bar recovery and the question of Richards' responsibility for such difficulties. There is an additional fatal flaw in the theory. Whether the broker made the transaction more difficult seems most properly considered in the context of whether Richards was the "procuring cause" of the sale. That question is not dispositive when the broker's responsibility is defined in the contract as it is here. *Nichols v. Pendley,* 331 S.W.2d 673, 676 (Mo.App.1960); R. Kratovil, Real Estate Law § 152, p. 73 (1946). The exclusive listing contract involved here did not make the commission dependent on whether Richards was the "procuring cause" of the sale but on whether he "contacted" the purchaser.

The trial court's judgment should, therefore, be reversed because (1) plaintiff performed all of the obligations under the contract; and (2) the court had no evidence to

support its decision to the contrary. And moreover, the court based its decision upon an erroneous declaration of the law in ruling that plaintiff was estopped.

Judgment reversed with directions to the trial court to set aside its judgment for the defendant and to enter judgment for the plaintiff for its commission, interest, and costs.

Judges concur.