**Claude MARRS, Plaintiff-Respondent,**

v.

**Gary R. TWITTY and Sharon K. Twitty, Defendants-Appellants.**

**No. 12332.**

Missouri Court of Appeals,
Southern District,
Division Two.

June 9, 1982.

Herbert Douglas, Douglas, Douglas & Johnson, Neosho, for plaintiff-respondent.

C. R. Rhoades, Rhoades & Perigo, Neosho, for defendants-appellants.

PREWITT, Presiding Judge.

Plaintiff-respondent sought judgment for the amount of a real estate commission. Following a non-jury trial, the court entered judgment for $5,200 in favor of plaintiff.

Defendants claim that the trial court erred: (1) in determining that "It makes no difference as far as the real estate commission to plaintiff is concerned that either Buyer or Seller later failed to perform"; defendants contend that this finding is contrary to the law and that plaintiff did not procure a purchaser who was ready, willing and able to purchase the property according to the contract terms; (2) because the evidence showed that the contract was not capable of being performed on the scheduled closing date and there was neither an agreement for an extension of time for performance as required by the statute of frauds nor any showing of consideration for such an extension; and (3) in allowing testimony that defendants agreed to an oral extension of the closing date because that evidence violated the parol evidence rule.

Plaintiff is a licensed real estate broker with an office in Anderson, Missouri. On March 31, 1980, he entered into a "Missouri Farm Listing Agreement" with defendants. This agreement provided that if a buyer was found for a farm owned by defendants located at Route 1, Goodman, Missouri, before September 30, 1980, then plaintiff would receive a commission of 7% of the sale price. On August 6, 1980, defendants agreed with Curtis and Sharon Swanson to exchange the farm for a house and lot owned by the Swansons in Bentonville, Arkansas. The agreement with the Swansons was evidenced by two written documents, each denoted "CONTRACT for the SALE of REAL ESTATE". These were form contracts filled in by plaintiff and signed by defendants and the Swansons. One provided that defendants' farm would be sold to the Swansons "subject to the acceptance of sister contract made by Gary and Sharon Twitty to Purchace [sic] home and lot located at 710 West Central, Bentonville, Arkansas." This document stated that defendants would pay plaintiff a commission of $5,200. The other "CONTRACT" stated that defendants would purchase from the Swansons their house and lot "subject to the acceptance of sister contract made by Curtis and Sharon Swanson to purchase caged layer farm owned by Gary and Sharon Twitty." It also provided that "Seller is to completely finish upstairs bedroms [sic]." Both documents set forth a closing date of August 15, 1980, "or at such other time and place as the parties may mutually agree."

Because improvements to the upstairs bedrooms were not finished by August 15, 1980, the transaction was not concluded on that date. Plaintiff testified that on August 15, 1980, defendants orally agreed to extend the date of closing to August 19, 1980. Gary Twitty stated that when he talked to plaintiff on August 15, 1980, plaintiff said he would go to Bentonville and Twitty asked plaintiff "to see what the value of the house was and how much was completed," but that the time of closing

never came up. Gary Twitty said he thought "that it wasn't up to us to set up the closing." He said, "we thought it was up to Benton County." He was apparently referring to the Benton County Savings & Loan Association. It had made a loan commitment to defendants, with the loan to be secured by the house that defendants were to purchase from the Swansons. That loan commitment was contingent upon the upstairs bedrooms being finished.

On August 18, 1980, defendants informed plaintiff that they were not going through with the transaction. The bedrooms were finished on August 18, 1980. The Swansons appeared at Marrs' office on August 19 for the closing but defendants did not appear. The Benton County Savings & Loan Association was prepared to make the agreed loan on August 19, 1980. The evidence showed that the only reason the transaction was not completed was because the upstairs bedrooms were not finished by August 15, 1980.

■ The general rule is that if a broker procures a purchaser who is ready, willing and able to buy on the seller's terms, the broker is entitled to a commission whether or not the transaction is consummated. *Kyle v. Kansas City Life Ins. Co.,* 356 Mo. 331, 201 S.W.2d 912, 913 (1947); *Tant v. Gee,* 348 Mo. 633, 154 S.W.2d 745, 747 (1941); *Roberts v. Gilchrist,* 397 S.W.2d 705, 709 (Mo.App.1965); *Isaac T. Cook Co. v. Craddock-Terry Co.,* 109 S.W.2d 731, 733 (Mo.App.1937); 12 C.J.S. Brokers § 148b, p. 433, § 163a, p. 509 (1980).

■ Defendants contend that this rule is not applicable because the Swansons were not ready, willing and able to perform according to the contract terms. This contention fails because when sellers enter into a binding contract with a prospective purchaser the issue of the purchaser being ready, willing and able to perform is eliminated from the broker's claim for a commission. *Shephard v. Hunter,* 508 S.W.2d 234, 238 (Mo.App.1974); *Isaac T. Cook Co. v. Craddock-Terry Co.,* supra, 109 S.W.2d at 733; 12 C.J.S. Brokers § 152b, p. 456 (1980). When a seller accepts a purchaser, the broker ordinarily ceases trying to sell the property. In this case but for the seller's acceptance the broker might have been able to find another purchaser within the time limits in the listing agreement.

■ We hold that defendants became liable to plaintiff for the commission when they entered into the agreement with the Swansons. Thus we do not find it necessary to rule on defendants' remaining contentions.

The judgment is affirmed.

MAUS, C. J., and HOGAN and BILLINGS, JJ., concur.