GAMBLE, Respondent, v. GRETHER et al.,
Appellants.

St. Louis Court of Appeals, November 15, 1904.

1. **PARTNERSHIP: Estoppel.** When a man advisedly permits the representation that he is a member of a partnership, or so represents himself, to a person who is doing business with the firm, he will be treated as a partner as to that person.

2. ———: ———. Where such person dealt with a firm, believing such representations, although they were false, it was not necessary for her to make further proof that she would not have trusted the partnership but for such belief, in order to hold the one represented to be a partner as such.

3. **BROKERS: Commissions: Procuring Cause.** A real estate agent is not entitled to a commission on account of the sale of property placed in his hands for sale unless he is the procuring cause of the sale.

4. ———: ———: ———. An owner of real estate placed it in the hands of a real estate firm for sale and the real estate firm attempted to negotiate a sale to a purchaser who was unwilling to pay the price asked by the owner and the negotiations were broken off. Subsequently, the owner through another real estate firm sold to the same purchaser at the price which he first offered, but without knowing it was the same purchaser. Before concluding the sale the owner notified the first real estate firm that she would sell at the reduced price, but they were unable to effect the sale. *Held*, the first firm was not entitled to a commission for the sale.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher*, Judge.

AFFIRMED.

*George W. Lubke* and *George W. Lubke, Jr.*, for appellant.

(1) Notwithstanding one holds himself out as a partner, when in fact he is not such, he is not liable to a creditor unless the creditor was induced to act upon

the representation, or extended credit on the strength of his being a partner. Hannah v. Baylor, 27 Mo. App. 302; Bissel v. Wade, 129 Mo. 439, 31 S. W. 928. (2) Where real estate has been placed in the hands of an agent for sale and he finds a customer to whom the owner sells the property either personally or through another agent, he is entitled to compensation notwithstanding the property was sold at a less price or on different terms than the first agent was authorized to sell it at. McCormack v. Henderson, 100 Mo. App. 647, 75 S. W. 171; Hogan v. Slade, 98 Mo. App. 44, 71 S. W. 1104; Cunliff v. Houseman, 97 Mo. App. 461, 71 S. W. 368; Crone v. Trust Co., 85 Mo. App. 601; Wright v. Brown, 68 Mo. App. 577; Brennan v. Roach, 47 Mo. App. 290; Tyler v. Parr, 52 Mo. 259. (3) It is immaterial whether plaintiff knew that the prospective purchaser with whom her second agents, Fisher & Co., were dealing, was Tobin. Whatever knowledge Fisher & Co. had was her knowledge. The knowledge of the agent within the scope of his authority is always the knowledge of the principal. Meier v. Blume, 80 Mo. 184; Hayward v. Insurance Co., 52 Mo. 181; Chouteau v. Allen, 70 Mo. 290; Wade on Notice, secs. 31-33.

*James Hagerman* and *Lee W. Hagerman* for respondent.

('1) The point made by defendant numbered "I" in brief of counsel concerning the question of partnership is inapplicable to the facts in this case. Young v. Smith, 25 Mo. 341. (2) The agent must secure for his principal a purchaser ready and able and willing to buy. Childs v. Critchfield, 66 Mo. App. 442; Pattison's Mo. Digest, p. 1403, sec. 68; Cox v. Bowling, 54 Mo. App. 289; Huggins v. Hearne, 74 Mo. App. 86; Yoder v. White, 75 Mo. App. 155; Finley v. Dyer, 79 Mo. App. 604. (3) The purchaser must be willing to buy within the terms of the authorization. Page v. Griffin, 71 Mo.

App. 524; Beauchamp v. Higgins, 20 Mo. App. 514. (4) He must produce a purchaser in the sense that he shall be the inducing or the procuring cause of the sale, and from the cases it appears that the test of producing or procuring cause is whether the acts of the agent are the legal cause of the intention on the part of the purchaser to buy. Pollard v. Banks, 67 Mo. App. 187; Beauchamp v. Higgins, 20 Mo. App. 514; Crowley v. Somerville, 70 Mo. App. 376; Campbell v. Vanstone, 73 Mo. App. 74; Warren v. Cram, 71 Mo. App. 638. (5) Where, therefore, as in this case, the facts are that an agent fails to get an offer within the terms of his authorization, and the offerer or inquiring purchaser is informed of the refusal of his proffered terms and withdraws from negotiations, and afterwards buys the same piece of property on the same or lesser terms than those which the first agent had authority to sell, and buys from either the principal himself or another agent of the principal, in that case the law is that the chain of causation was broken, since the efforts of the first agent have produced no results, and that the proximate or legal or procuring cause is not the act of the first agent; and that, therefore, he is not entitled to commissions. (6) The facts of this case come, therefore, within the above principle which is established by the following cases: Wolfe v. Rosenberg, 67 Mo. App. 403; Earp v. Cummins, 54 Penn. St. 394; Life v. Luedwick, 14 Ill. App. 372; Sievers v. Griffin, 14 Ill. App. 63; Wylie v. Bank, 61 N. Y. 416; Armstrong v. Wann, 29 Minn. 126; Ames v. Cameron, 19 D. C. 435; Means v. Stone, 44 Ill. App. 444; Livesay v. Miller, 61 Md. 336.

GOODE, J.—The respondent sued for rents collected by the appellants as her agents and they counterclaimed for a commission alleged to be due them for selling a piece of property in St. Louis belonging to the respondent. An issue was raised as to whether Ells-

worth T. Grether was a member of the firm of John Grether & Company, employed by the respondent to act as her agents.

After hearing the evidence the court below directed the jury to find a verdict in respondent's favor on her account against all the appellants and on the counterclaim as well.

It is asserted that error was committed in ordering a verdict against Ellsworth T. Grether, notwithstanding he was held out as a member of the partnership with his consent, because it did not appear that respondent either extended credit or otherwise dealt with the firm on the faith of his name. It was shown his name appeared on the firm's letter heads as a member of it, and that the respondent thence derived the belief that he was a member and dealt with the firm so believing. In truth, she had no intimation to the contrary. Ellsworth Grether defended on the ground that he was an employee of the firm instead of a member. But the respondent had no means of knowing this. The law is that when a man advisedly permits the representation that he is a member of a partnership, or so represents himself (and Ellsworth Grether did both) to a person who is doing business with the firm, he will be treated as a partner as to that person. Rimel v. Hayes, 83 Mo. 200. It is true, no doubt, that a person who was not deceived by the representation, because it was not made to him or he never heard of it, has no footing in law from which to push the pretending member of the firm into the position and liabilities of an actual member. Liability in such instances is said to depend on estoppel. Hahlo v. Mayer, 102 Mo. 93, 13 S. W. 804; 15 S. W. 750. We understand the rule to mean that there must have been a representation concerning the membership of the firm to the person seeking to hold the pretended partner, before the contract sought to be enforced against the latter was made. Undeniably such a holding out to Mrs.

Gamble of Ellsworth Grether as a member of appellant's firm occurred prior to the transactions between her and the firm. The essence of the rule is that the person complaining should have been misled, and Mrs. Gamble was. The estoppel arises from the misbelief created by the false representation. The argument is that respondent is not shown to have relied on Ellsworth Grether's name in her dealings with the firm or to have parted with anything of value on the strength of it. There was, indeed, no proof that she would have refrained from giving her business to the firm· had she known Ellsworth Grether was not a member of it. Neither was it shown that she would have given the firm the business with that knowledge. But it was proven that, believing him to be a partner, she made the firm her agents for a duty in which the financial responsibility of the members was an important guaranty against loss at their hands. She was not required to make proof that she would not have trusted the partnership but for a belief that Ellsworth Grether belonged to it. Such proof might be impossible; for it is easy to see that she can not now be sure whether she would or not, if she had been confronted with the question when she was considering whom to select as her agent.

We take up next the ruling on the counterclaim. It is said the trial court erred in withdrawing the evidence on that demand from the jury. The facts are that Mrs. Gamble authorized the appellants to sell the property, for the sale of which they claim a commission, for different prices at different times, and at first, in the latter part of 1901, for $26,000. Appellants spoke to two men by the name of Tobin (John D. and John E.) and in December, 1901 and January, 1902, received several offers from those men, beginning with one of $20,000 and rising to one of $22,500. The respondent refused all those offers, but reduced her price during the negotiations to $23,500, which the Tobins declined

to pay. The maximum price offered by them was as stated, $22,500. After this was rejectd by Mrs. Gamble, the Tobins contracted to buy another property on Pine street and ceased to negotiate with the appellants for Mrs. Gamble's property. Several weeks passed, during which the Tobins agreed to buy the Pine street property, but the sale fell through because of the title to the property proving defective. Then John E. Tobin's attention was again drawn to Mrs. Gamble's property by Robinson, a salesman of Fisher & Company, another firm of real estate agents in St. Louis. Tobin again offered $22,500 for it and Mrs. Gamble decided to take it, though she had formerly refused that price. She had no knowledge, however, that Tobin was the bidder, as he acted through an employee named Meyers, to whom Mrs. Gamble made the deed. But before accepting said price, she saw the appellants and notified them that she had changed her mind about taking $22,500 for the property, that she had had an offer of that sum through Fisher & Company and wished appellants again to see if the Tobins would pay as much, as she would like to have appellants make the deal. John L. Grether called John E. Tobin over the telephone and asked him about the matter and Tobin said he did not want the property; whereupon Mrs. Gamble sold it for $22,500 through Fisher & Company. The above facts are according to the testimony for the appellants. The Tobins swore positively that the appellants never offered the property to them for $22,500, and that the lowest price named by the appellants was $22,800. Whatever may be the truth about that circumstance, it is certain that the efforts of the appellants to sell the property failed. This was due, no doubt, to Mrs. Gamble's refusal of the offer which the Tobins made and which she afterwards accepted; but at that time she was unwilling to take so low a price. had not authorized the Grethers to sell for it and had a perfect right to refuse it. She had the right, too, to

change her mind on that point and afterwards to put the property in the hands of Fisher & Company. Wolfe v. Rosenberg, 67 Mo. App. 403. She could not do so for the purpose of preventing the appellants from earning a commission and to deprive them of the fruits of their efforts in her behalf. There is nothing to show that she was inspired by such a motive. She simply decided, on reflection, to accept a price that had been offered her through another agency, identical with the one she had declined when submitted by the appellants; and this was her right. She acted honestly and before accepting it afforded the appellants a chance to make the sale to the Tobins, with whom they had been negotiating, she being ignorant that the Tobins were bidding through Fisher & Company. John E. Tobin refused then to deal with appellants because he was dealing with Fisher & Company, and the latter firm closed the sale.

The central question in all cases wherein claims for commissions for the sale of real estate are preferred by two different agents is: Which effected the sale; or, as the phrase goes, which was the procuring cause of the sale? Which agent found the buyer and got from him an offer to pay the price the property brought whilst the agent had authority to accept that price? Another collateral but important question arises in the present case: Was there any evidence tending to prove the appellants effected the sale to the Tobins? It is. likely that their influence was felt from first to last by the Tobins; but it is manifest that they did not sell to the Tobins, or in the legal sense, cause the sale; as their exertions never brought the Tobins to a willingness to purchase at any price they (appellants) were authorized to take. The negotiations ceased, the Tobins dismissed the matter, purchased another property and, after that sale fell through, were induced to negotiate again for the respondent's property by other agents. The evidence is consistent on those points.

Mrs. Gamble had the right to authorize Fisher & Company to sell the lot for $22,500, although she had previously refused to take an offer of that sum through the Grethers. There is no doubt of her right to do so, if she acted in good faith. A person who puts property into the hands of an agent to sell, does not bind himself perpetually against employing another agent to sell at a less price. There must be a time when he may employ some one else, and the time is when the first one's efforts, having come to naught, are discontinued. Appellants' counsel contend that their clients "found the Tobins as purchasers" and, therefore are entitled to the commission. This is not true. The appellants attracted the attention of the Tobins to the property, but could never induce them to purchase within the terms of appellants' authority. The record is wholly devoid of any circumstance tending to convict Mrs. Gamble of insincerity or double dealing. She employed Fisher & Company in good faith and paid their commission. There might be some reason for questioning her conduct if she had known who were the bidders through Fisher & Company; but of this she was wholly ignorant, and her conduct in affording the Grethers another chance to sell before she would take Fisher & Company's offer, argues for the justice of her motive. The case is that of one broker setting on foot a negotiation for the sale of property which wholly fails and after it has failed another broker stepping in and making the sale to the party negotiated with by the first one. In instances of that kind there is a probability that the work of the first broker made some impression and had something to do with the sale which at last occurred; but he did not effect the sale in legal contemplation and, therefore, earned no commission. Earp v. Cummins, 54 Pa. St. 394. The decisions all frown on any conduct which, by interrupting negotiations, deprives the first broker of a fair chance to conclude a sale to a possible purchaser.

Where this occurs and there is a sale by some one else, the first agent is awarded his commission. But this case is distinguished from cases of that sort by the unquestioned failure and cessation of the appellant's efforts for quite an interval before Fisher & Company took the matter up with the buyers.

The judgment is affirmed. All concur.