249 F.2d 630
 MARYLAND CASUALTY COMPANY, Appellant,
v.
MANUFACTURERS & MERCHANTS INDEMNITY COMPANY, Appellee,
Feld Operating Services, Inc., a Corporation, Helzberg Diamond Shops., Inc., a Corporation, Barnett C. Helzberg, Appellees on Counterclaim and Cross-Claim.
 No. 15656.
 United States Court of Appeals Eighth Circuit.
 November 13, 1957.
 
 J. R. Clagett, Kansas City, Mo. (Thomas J. Wheatley and Paul G. Koontz, Kansas City, Mo., on the brief), for appellant.
 Jesse D. James, Kansas City, Mo. (William S. Hogsett and Joseph R. Hogsett, Kansas City, Mo., on the brief), for appellee Manufacturers & Merchants Indemnity Co.
 Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.
 VAN OOSTERHOUT, Circuit Judge.
 
 
 1
 This is a declaratory judgment action brought by Maryland Casualty Company, hereinafter called plaintiff, against Manufacturers & Merchants Indemnity Company, hereinafter called defendant, asking the court to determine that defendant is primarily liable under two liability insurance policies it issued to Feld Operating Services, Inc., hereinafter called Feld, for damages inflicted by a Cadillac automobile, titled in the name of Feld and in the possession of and operated by Helzberg Diamond Shops, Inc., hereinafter called Helzberg. Defendant, among other things, contended that its existing automobile liability policies issued to Feld did not cover the Cadillac automobile, and further contended that, if such policies were construed to cover the Cadillac, defendant was entitled to have the policies reformed to exclude such coverage upon the ground of mutual mistake.[1] The court sitting without a jury found for the defendant. This appeal is from judgment dismissing the complaint.
 
 
 2
 Jurisdiction based upon diversity of citizenship and the requisite amount is established.
 
 
 3
 The pertinent facts are as follows: Helzberg desired a new Cadillac for the use of its president, but was unable to obtain immediate delivery. Feld, because of its extensive need for automobiles in its auto rental business, was in a position to obtain prompt delivery of a Cadillac under a fleet contract it had with General Motors. As a result of negotiations between Feld and Helzberg, a new Cadillac was obtained for Helzberg on January 21, 1953. It was registered in the name of Feld in Kansas under the Kansas Certificate of Title Law, and was immediately turned over to Helzberg. Helzberg gave Feld its check for $4,508, the exact purchase price of the Cadillac. Feld cashed the check and entered a credit upon its books in favor of Helzberg for such amount, which was intended to offset the charge to be made to Helzberg when title was transferred. Helzberg carried the car upon its books under the heading "Fixed Assets — Automobile." Feld made no profit on the transaction and no profit was contemplated. Feld entered into the foregoing arrangement as a courtesy and accommodation for Helzberg in order to enable Helzberg to get early delivery upon a Cadillac. The only reason title was taken in the name of Feld and was not immediately transferred to Helzberg was because Feld, under its fleet contract with General Motors, was not authorized to purchase cars for resale, but was permitted to purchase cars for its own use only and was required to retain cars it purchased for at least six months. Feld desired to comply with the provisions of its fleet contract.
 
 
 4
 The trial court found, "From January 21, 1953, through February 4, 1953, Helzberg's had possession of the Cadillac and as inchoate owner thereof asserted all indicia of ownership in the maintenance, operation and use of it." Such finding is supported by substantial evidence. It is clear that it was the intention of both Feld and Helzberg that Helzberg should have full and complete possession of the car, could use or abuse it at any time and in any manner it saw fit, and that Helzberg acquired the full beneficial ownership of said car. Feld retained no right to repossess the car or to control its use. A lease covering the Cadillac was entered into between Feld and Helzberg. No rent was to be paid under this lease. The parties stipulated and the court found that the lease was fictitious.
 
 
 5
 The printed lease contains the following typewritten provision:
 
 
 6
 "`Customer' agrees to maintain in full force policy insuring the vehicle against collision, fire and theft, and the hazards covered by the so-called extended coverage endorsement. `Customer' also agrees to maintain B. I. & P. D. liability insurance with minimum limits of $100,000/$300,000/$10,000 and to include `Feld' as additional insured."
 
 
 7
 Undisputed oral evidence on the part of responsible officers of both Feld and Helzberg is to the effect that Helzberg was to carry its own insurance on the Cadillac and that Feld would not supply insurance.
 
 
 8
 On January 21, 1953, at Helzberg's request, plaintiff, which was carrying other automobile liability insurance for Helzberg, by policy endorsement, assumed liability as to the Cadillac here involved. Said endorsement describes the Cadillac, and after the description states: "Car is titled in name of Feld Operating Services." At the same time, plaintiff issued a certificate to Feld showing that it had assumed liability insurance upon the Cadillac.
 
 
 9
 On February 4, 1953, the Cadillac, while being operated by Helzberg's president, on company business, was involved in an accident. As a result of damages caused by such accident, plaintiff paid to the injured parties the sum of $100,000 and paid expenses totaling $3,797.22. These amounts are not here disputed and are within the liability limits of all policies here involved. Plaintiff made the payments under an agreement with the defendant that such payments would be without prejudice to plaintiff's rights in the present action. Plaintiff's policy was in effect on the date of the accident, and provided in part:
 
 
 10
 "Conditions * * * 13. Other Insurance. * * * provided however, the insurance under this policy with respect to loss arising out of the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to such automobile or otherwise."
 
 
 11
 "Endorsement No. 1:
 
 
 12
 * * * * * *
 
 
 13
 "2. The insurance for bodily injury liability and for property damage liability with respect to loss arising out of the maintenance or use of any hired automobile shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to the automobile or otherwise."
 
 
 14
 Helzberg paid the plaintiff the full premium for the insurance upon the Cadillac on the basis of rates applicable to fully owned automobiles.
 
 
 15
 Plaintiff claims that the Cadillac is a non-owned automobile within the provision of the policy exclusion hereinabove quoted, and hence the primary responsibility for the casualty loss it has paid rests upon the defendant because of liability assumed by the defendant in the two policies it issued to Feld. The contest here is between two insurance carriers.
 
 
 16
 We now look to the record to determine whether the policies which defendant issued to Feld cover the Cadillac.
 
 
 17
 Defendant's Policy No. 13-123894, issued to Feld, was in force at the time of the accident. This policy by its terms covers automobiles owned by Feld and leased to others, or held for such leasing. In the light of the stipulation of the parties to the effect that the lease was fictitious and that no rental was claimed thereunder, the court's conclusion that the Cadillac in question was not rented or held for lease is fully supported by the evidence. Consequently, the court correctly determined that Policy No. 13-123894 did not afford any coverage upon the Cadillac.
 
 
 18
 There was also in force at the time of the accident defendant's Policy No. CAG-2485 issued to Feld. Plaintiff concedes that defendant can not be liable upon both policies it issued and asserts, "We believe that as between the two policies Manufacturers is liable under the CAG policy." The CAG policy covered hired automobiles and non-owned automobiles and garage liability. There is a dispute whether it covers owned automobiles. It is plaintiff's contention that the Cadillac was owned by Feld. The policy contains a provision, "The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges." The "coverages" and "specific premium charges" thereafter appear in Schedules A and G of the Declarations. The printed form of Schedule A was so arranged that it could be used to cover three classes of automobiles, for which specific premium charges were stated in Schedule A. These were "Owned Automobiles," "Hired Automobiles," and "Non-Owned Automobiles." Schedule G pertains only to garage liability and is not material here. In Schedule A the only rates of premiums shown are those for covering "Hired Automobiles" and "Non-Owned Automobiles." No rate of premium at all is shown for covering "Owned Automobiles." Instead, at the place in Schedule A where the rate would have shown if owned automobiles had been covered there is a mere reference reading, "See Policy Number 13-123894." The specified premium on this policy was $55.40. Premiums were to be determined by audit. On the audit sheet, signed by defendant and Feld, dated December 10, 1953, covering the period from December 1, 1952, to March 1, 1953, under the heading "Owned Automobiles" appears the statement "Not Covered." At the trial numerous witnesses, including Feld's president and comptroller and Helzberg's officers and defendant's agent who wrote the policy, testified that the Cadillac was not to be covered by Feld's insurance. There is no proof to the contrary. No premium was paid to the defendant for coverage of the Cadillac. The court, in its conclusions of law, states:
 
 
 19
 "With respect to Policy CAG-2485, the evidence is clear and convincing that `owned automobiles' of Feld were not intended to be covered under the said policy. The provisions of such policy affording any such coverage are subject to being reformed so as to reflect the true intention of the parties in respect to that subject-matter."
 
 
 20
 The court's conclusion that the CAG policy provided no insurance on the Cadillac is supported by substantial evidence.
 
 
 21
 We also agree with the trial court that, if the CAG policy can not properly be so costrued, defendant is entitled to reformation of the CAG policy, under its counterclaim and cross-claim, to exclude coverage of the Cadillac. This court very recently in Commercial Standard Insurance Company v. Maryland Casualty Company, 248 F.2d 412, had occasion to consider the law with reference to reformation of an automobile liability insurance policy. In that case it was conceded that the policy, taken literally, did cover the Chrysler automobile involved in the accident. This court held that parol evidence was properly admitted to show mutual mistake, and affirmed the trial court's finding that reformation should be granted because of mutual mistake.
 
 
 22
 In the last cited case, as here, the appellant urged that since the case was tried to the court and the evidence was largely documentary, this court upon review is not bound by the provisions of Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. This court reviewed its previous decisions and restated the applicable rule as follows:
 
 
 23
 "In a nonjury case, this Court may not set aside a finding of fact of a trial court unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law."
 
 
 24
 Plaintiff, in its reply brief, concedes that if defendant's policies did not extend coverage to Helzberg on the Cadillac plaintiff is not entitled to recover. For the reasons heretofore stated, we are convinced that the trial court's finding that the Cadillac was not covered by the defendant's policies is supported by substantial evidence and is not clearly erroneous. In the light of the foregoing conclusion, we also agree with the trial court that no relief by way of reformation is necessary.
 
 
 25
 We forego discussion of other issues raised by the parties as what has heretofore been said compels an affirmance.
 
 
 26
 Judgment affirmed.
 
 
 
 Notes:
 
 
 [1]
 Defendant in its counterclaim and cross-claim for the reformation of its policies made Feld Operating Services, Inc., Helzberg Diamond Shops, Inc., and Barnett C. Helzberg parties