250 F.2d 498
 Walter FIELDS, Appellant,
v.
ROSS OIL COMPANY, a corporation, and Ernest Clifford Mahan, Appellees.
Nicky REICHERT, a minor, by his next friend, Alyce W. Reichert, Appellant,
v.
ROSS OIL COMPANY, a corporation, and Ernest Clifford Mahan, Appellees.
Norman Faye McCONNEL, James A. Sams, and Donald Lee Sams, by their next friend, George Fields, Appellants,
v.
ROSS OIL COMPANY, a corporation, and Ernest Clifford Mahan, Appellees.
Homer REICHERT and Alyce W. Reichert, Appellants,
v.
ROSS OIL COMPANY, a corporation, and Ernest Clifford Mahan, Appellees.
 Nos. 15837-15840.
 United States Court of Appeals Eighth Circuit.
 December 30, 1957.
 
 T. B. Russell and L. D. Joslyn, Charleston, Mo. (Joslyn & Joslyn, Charleston, Mo., were with them on the brief), for appellants.
 Allen L. Oliver, Cape Girardeau, Mo. (Jack L. Oliver and Oliver & Oliver, Cape Girardeau, Mo., were with him on the brief) for appellees.
 Before SANBORN, JOHNSEN and VOGEL, Circuit Judges.
 VOGEL, Circuit Judge.
 
 
 1
 Plaintiffs brought these four suits to recover damages for injuries and death arising out of an automobile accident on October 14, 1955, in which a truck owned by defendant Ross Oil Company and driven by defendant Ernest Clifford Mahan collided with an automobile owned and operated by Mrs. Margaret Penrod in which Mrs. Effie Fields and Nicky Homer Reichert were riding. Both Mrs. Fields and Mrs. Penrod were killed in the accident and Nicky Homer Reichert was seriously injured. The suits were originally commenced in Missouri state court but were removed to the federal court because of diversity of citizenship and involvement of the statutory amounts. The cases were consolidated for trial and tried before the court without a jury. The trial court filed its Memorandum Opinion, made Findings of Fact and Conclusions of Law and entered judgment in favor of the defendants in each case. These appeals followed.
 
 
 2
 At the time of the accident the Ross truck, driven by Mahan, was traveling in a southwardly direction on Highway EE, a road along the top of an earthen levee in Mississippi County, Missouri. The Penrod car was being driven in an easterly direction on Highway HH, which intersects with Highway EE. Highway EE, upon which the truck was driven, was a through highway and was protected by stop signs on intersecting highways. The day was clear, the hour between four-thirty and five p. m. As Highway HH approaches the intersection to cross Highway EE, it has to go up over the levee, which is of considerable elevation. An official stop sign for observance by eastbound traffic on Highway HH was located 29 feet west of the edge of EE Highway and 12 feet south of the south edge of HH Highway. Both vehicles were approaching the intersection at approximately 30 miles per hour. Mahan, the driver of the truck, did not observe the Penrod car approaching from his right until it was a few feet west of the stop sign, although nothing prevented him from seeing it prior thereto.
 
 
 3
 When the Penrod car did not slow up and stop at the stop sign, Mahan immediately applied his brakes, sounded his horn and swerved to the left. The car driven by Mrs. Penrod continued into the intersection without slowing or stopping, although it swerved slightly just before it was struck by the oil truck. The vehicles collided in the southeast segment of the intersection of the two highways, resulting in the deaths and injuries for which these suits have been instituted.
 
 
 4
 Section 304.020, Laws of Missouri 1953, Section 304.021(4), V.A.M.S., provides that drivers shall not only stop at the entrance to a through highway, such as EE, but "* * * shall yield the right of way to other vehicles which have entered the intersection on the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard".
 
 
 5
 Plaintiffs' cases were based on primary negligence in charging failure to keep a proper lookout, sound timely warning, stop or slacken speed, drive close to the right-hand side of the road or swerve to the right to avoid the Penrod car. They also were based on humanitarian negligence and therein charged failure to stop or slacken speed, swerve to the right or sound timely warning. The trial court found, and properly so, that Mrs. Penrod's failure to stop at the stop sign made her guilty of contributory negligence and accordingly in the suit for her death there could be no recovery based on primary negligence. The court also held that the occupants of the Penrod car were not chargeable with Mrs. Penrod's negligence so that insofar as they or suits brought in their behalf were concerned, there was no bar to recovery on either of plaintiffs' theories.
 
 
 6
 Plaintiffs state the issues in this court as follows:
 
 
 7
 "Appellants contend that there is no evidence from which the trial court could properly conclude that the driver of defendant's truck, Ernest Mahan, was under no duty to act sooner or differently than he did, but that on the contrary, all of the testimony is such that reasonable minds could not fail to conclude that he could and should have acted sooner and differently, and that his failure to do so was negligence which directly contributed to cause the collision."
 
 The court found:
 
 8
 "(12) There is no substantial testimony to support any plaintiffs' allegations of primary negligence in the several petitions, unless it be the one for failure to keep a lookout. Mahan did not observe the Penrod car until it was a few feet west of the stop sign. There was nothing about the movement of the Penrod car, prior to the time that Mahan saw it, which should have put him on notice to act. There was nothing about the movement of the Penrod car, when it was west of where Mahan actually saw it, which should have caused him to know that a collision was imminent. Under the facts and circumstances in these cases, Mahan's failure to observe the Penrod car before he did see it, does not amount to negligence, since he did observe it several feet before it reached the stop sign. Mahan applied his brakes and sounded his horn at or just before the Penrod car ran the stop sign and was not guilty of primary negligence, since his failure to keep a proper lookout did not primarily contribute to cause the collision.
 
 
 9
 "(13) Under the humanitarian doctrine, the Penrod car was not in a position of imminent peril until it left the approximate location of the stop sign. The physical facts disclose that at that time, Mahan, the driver of the oil truck, sounded his horn, applied his brakes with force, and swerved to the left. The Penrod car traveled the distance from the stop sign to the point of collision in approximately a second and a half. Under the facts in this case, it was only when Mahan saw the Penrod car run the stop sign did the humanitarian doctrine impose upon Mahan the duty to act. At that moment he sounded his horn, he applied his brakes with force and swerved to the left.
 
 
 10
 "Under the humanitarian doctrine the Plaintiffs are not entitled to judgment."
 
 
 11
 Accord, Standard Oil Co. v. Crowl, 8 Cir., 1952, 198 F.2d 580, 582.
 
 
 12
 It was plaintiffs' theory that it was the duty of the truck driver, Mahan, to keep a viligant lookout and when he saw or, by the exercise of the highest degree of care should have seen that the Penrod car was likely to proceed into the path of his truck it became his duty to slacken speed, swerve to the right or sound a timely warning. Plaintiffs complain because the trial court held that the occupants of the Penrod car were not in imminent peril until Mahan saw the car run the stop sign. They claim that the court, in so holding, applied the doctrine of discovered peril rather than discoverable peril and unduly limited the zone of peril to a point where Mahan actually saw the car. Plaintiffs' quarrel is not with the law as viewed here but with the facts as found by the trial court. Concededly, Mahan, the truck driver, was on a through highway which was protected by stop signs. Traffic crossing the highway upon which he was traveling was supposed to stop and to yield the right-of-way to him. The trial court stated in its opinion:
 
 
 13
 "The testimony discloses that Mahan, the driver of the oil truck, did not observe the Penrod car until it was a few feet west of the stop sign, although nothing prevented him from seeing it prior thereto. This fact, however, is not necessarily decisive of importance — that is to say, unless there was something about the movement of the Penrod car prior to the time that Mahan saw it which should have put him on notice to act. Had he seen the Penrod car before he did see it, there was nothing in its movement which should have caused him to have been cognizant of any danger to him — that is to say, there was nothing about the movement of the Penrod car when it was to the west of where he actually saw it which we may say as a matter of law should have caused Mahan to know that a collision was imminent."
 
 The court further stated:
 
 14
 "Under the facts in this case only when Mahan saw the Penrod car run the stop sign did the humanitarian doctrine impose upon Mahan the duty to act. At that moment he sounded his horn, he applied his brakes and swerved to the left, and under the humanitarian doctrine the plaintiffs are not entitled to judgment." Whether or not there was anything about the Penrod car or its driver prior to the time Mahan observed it which would have given warning of imminent danger was clearly a question of fact for the trier thereof. The trial court not only had the testimony of Mahan, the truck driver, but of an eye-witness who observed the Penrod car at a point 100 or 150 feet west of the intersection. His finding that "Had he seen the Penrod car before he did see it, there was nothing in its movement which should have caused him to have been cognizant of any danger to him * * *", was a finding of no causal connection between Mahan's failure to look and the plaintiffs' injuries. A finding of primary liability under Missouri law requires that such causal connection be shown. Donnelly v. Goforth, Mo.1955, 284 S.W.2d 462. Since this finding of the trial court was based on substantial evidence, we cannot say that it is clearly erroneous.
 
 
 15
 Rule 52(a) of F.R.C.P., 28 U.S. C.A., provides in part:
 
 
 16
 "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."
 
 
 17
 In consideration of these appeals this court has, of course, followed the rule that in a nonjury, or jury-waived case, we may not set aside a finding of a trial court unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law. Commercial Standard Ins. Co. v. Maryland Casualty Co., 8 Cir., 1957, 248 F.2d 412, 416; Pendergrass v. New York Life Ins. Co., 8 Cir., 1950, 181 F.2d 136, 137; Cleo Syrup Corp. v. Coca Cola, 8 Cir., 1943, 139 F.2d 416, 417, 418, 150 A.L.R. 1056, certiorari denied, 1944, 321 U.S. 781, 64 S.Ct. 638, 88 L.Ed. 1074.
 
 
 18
 Plaintiffs would predicate error on the trial court's use of the three-quarters second reaction time after Mahan had testified that it would take "somewhere in the neighborhood of the length of my truck from the time I saw the woman until I could get my foot on the brake". Edwards v. Dixon, Mo.App. 1957, 298 S.W.2d 466, 469. His truck measured 23 feet. Since the presumed three-quarters second reaction time gives a reaction distance of 33 feet at 30 miles per hour, the distance relied on is "somewhere in the neighborhood" of the length of Mahan's truck. As the trier of that fact the trial court committed no error in relying on a reasonable inference from the testimony applicable thereto.
 
 
 19
 It was plaintiffs' claim that had the truck driver Mahan turned to the right instead of to the left he would have avoided a collision. The trial court stated:
 
 
 20
 "While it is true that had he done something else he might possibly have avoided the accident, no reasonable person would expect Mahan to exercise the cool judgment of one sitting at a desk and figuring mathematically what might or might not be done. He applied his brakes with force, he sounded his horn, and he swerved to the left."
 
 
 21
 In support of their contention that the court erred in applying the "emergency doctrine" to Mahan's actions, plaintiffs cite Jones v. Hughey, Mo.1955, 283 S.W. 2d 550, 552. That case holds that, "* * * the emergency doctrine has no application and may not be asserted if the emergency arises wholly or partially from the negligence of the one who seeks to invoke the doctrine." The court here found no primary negligence on Mahan's part. Even if, arguendo, it may be said that Mahan was negligent in failing to observe the Penrod car before he did observe it, the trial court has specifically found that there was nothing about its appearance which would have warned him of imminent danger so that his then so-called negligence was not and could not have been a proximate cause of his getting into the emergency situation. We find no error in the trial court's application of the emergency doctrine.
 
 
 22
 At best, the plaintiffs here have cases for the trier of the facts. Certainly, if these cases had been tried to a jury it would have been error for the trial court to direct a verdict in favor of the plaintiffs and leave only the question of the amount of damages for the jury's determination. Even if we were inclined to disagree with the findings of the trial court, and we are not, we would be unable to set aside the judgments, as they are based upon substantial evidence.
 
 
 23
 Affirmed.