Edward F. HIGGINS, Appellant,

v.

D. M. KITTERMAN et al., Appellees.

No. 15799.

United States Court of Appeals
Eighth Circuit.

July 30, 1958.

Walter A. Raymond, Kansas City, Mo. (Jones & Alexander, St. Louis, Mo., on the brief), for appellant.

Lyman Field, Kansas City, Mo. (Rogers, Field, Gentry & Jackson, Kansas City, Mo., on the brief), for appellees.

Before GARDNER, Chief Judge, and VOGEL and MATTHES, Circuit Judges.

VOGEL, Circuit Judge.

Edward F. Higgins, plaintiff-appellant, brought this action for an accounting against the defendants-appellees, co-partners engaged in a plastic molding business in Kansas City, Misssouri, under the name of National Products Company. Diversity of citizenship and more than the statutory amount make for federal court jurisdiction.

Plaintiff, a manufacturer's agent or broker for die casting and plastic molding companies, alleged that as such broker he was employed by the defendants to obtain business for them upon which they agreed to pay a commission of 5%; that the plaintiff arranged meetings for defendants with Lemay Machine Company and Reddi-Wip Company and assisted defendants in obtaining contracts for the manufacture of Reddi-Wip caps, upon which he alleged he was entitled to a commission. Defendants denied any indebtedness. The case was tried without a jury. The court made findings of fact and conclusions of law, upon which it entered judgment dismissing the complaint, whereupon plaintiff appealed. The law of the State of Missouri controls.

In non-jury or jury-waived cases where the evidentiary facts are not in any real dispute and the trial court's conclusions therefrom are reached by a process of reasoning, we have been fre-

quently asked, as we are here, to hold ourselves " * * * free from the restraint of the 'clearly erroneous' rule." It is pointed out that we, as advantageously as the trial court, can draw inferences and ultimate conclusions from undisputed facts. In other words, we are asked to substitute our judgment for that of the trial court. This court has repeatedly announced the rule governing the functions and powers of a court of appeals in non-jury or jury-waived cases. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A., provides that:

"Findings of fact shall not be set aside unless clearly erroneous, * * *."

In Cleo Syrup Corp. v. Coca-Cola Co., 8 Cir., 1943, 139 F.2d 416, 417, 150 A.L.R. 1056, we said:

"This Court, upon review, will not retry issues of fact or substitute its judgment with respect to such issues for that of the trial court. Storley v. Armour & Co., 8 Cir., 107 F.2d 499, 513; Gasifier Mfg. Co. v. General Motors Corporation, 8 Cir., 138 F.2d 197, 199; Travelers Mut. Casualty Co. v. Rector, 8 Cir., 138 F.2d 396, 398. The power of a trial court to decide doubtful issues of fact is not limited to deciding them correctly. Thompson v. Terminal Shares, Inc., 8 Cir., 89 F.2d 652, 655; Pittsburgh Plate Glass Co. v. National Labor Relations Board, 8 Cir., 113 F.2d 698, 701 (affirmed 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251); Travelers Mutual Casualty Co. v. Rector, supra. In a non-jury case, this Court may not set aside a finding of fact of a trial court unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law. Aetna Life Ins. Co. v. Kepler, 8 Cir., 116 F.2d 1, 4, 5; Gasifier Mfg. Co. v. General Motors Corporation, 8 Cir., 138 F.2d 197, 199; Travelers Mutual Casualty Co. v. Rector, supra."

In Pendergrass v. New York Life Insurance Co., 8 Cir., 1950, 181 F.2d 136, 138, this court pointed out:

"There is no logical reason for placing the findings of fact of a trial judge upon a substantially lower level of conclusiveness than the fact findings of a jury of laymen, or those of an administrative agency, which may be set aside only if unsupported by substantial evidence. The findings of fact of a trial court should be accepted by this Court as being correct unless it can be clearly demonstrated that they are without adequate evidentiary support or were induced by an erroneous view of the law. The entire responsibility for deciding doubtful fact questions in a non-jury case should be, and we think it is, that of the district court."

This court has consistently adhered to such rule. Commercial Standard Ins. Co. v. Maryland Casualty Co., 8 Cir., 1957, 248 F.2d 412, 416; Maryland Casualty Co. v. Manufacturers & Merchants Indemnity Co., 8 Cir., 1957, 249 F.2d 630, 633; Fields v. Ross Oil Co., 8 Cir., 1957, 250 F.2d 498, 502. In American Indemnity Co. v. Swartz, 8 Cir., 1957, 250 F.2d 532, 536, Judge Van Oosterhout, speaking for this court regarding the findings and conclusions of the trial court in a non-jury case, stated:

"The burden is upon the appellant to demonstrate error. To obtain a reversal the appellant must show that the *conclusion* reached by the trial court as to the *interpretation* of the contract is irrational, illogical, unsound, or contrary to any local or general law applicable to the interpretation of an insurance contract. Grundeen v. United States Fidelity & Guaranty Co., 8 Cir., 238 F.2d 750, 753." (Emphasis supplied.)

With such rule in mind, we consider the record.

Lemay Machine Company of St. Louis, Missouri, hereinafter referred to as Le-

may, and which was owned and operated by one Fred Sullentrup, had a contract with the Reddi-Wip Company by which it supplied Reddi-Wip with certain plastic caps and valve assemblies used as a means for covering and dispensing, under pressure, products from can containers. Lemay procured the component parts from various companies and after assembly delivered them to Reddi-Wip. Sometime in early April, 1949, plaintiff called on Lemay to solicit business. He learned that some difficulty had been experienced with reference to the plastic caps and he advised Lemay that it would require an experienced molder to solve its problem. He was told to get in touch with such a person and bring him to St. Louis. Thereupon, plaintiff communicated with Don Kitterman, general partner and managing officer of the National Products Company, telling him that he had a big plastic molding job lined up and wanted to know if National would pay him a commission on the business. National agreed. The result was that Kitterman, representing National, went to St. Louis and was taken by plaintiff to the Lemay plant where a conference was held concerning the cap and valve assembly and it was agreed that National would prepare samples of some new designs at its own expense and submit them to Lemay, together with price quotations. At that meeting plaintiff and Kitterman, representing National, had knowledge that the plastic cap and valve assemblies that Lemay was interested in purchasing were for the use of Reddi-Wip and would have to be submitted to Reddi-Wip and approved by it. They were told, however, that they were not to go direct to Reddi-Wip.

On April 9, 1949, after the conference, Kitterman, in behalf of National, wrote Sullentrup of Lemay, advising that National was working on a plastic cover which would be forwarded as soon as completed. On April 12, 1949, Kitterman, in behalf of National, wrote the plaintiff that he was "enclosing our quotation No. 210 to Lemay Machine Company on the cover they are now using"

and advising that sample drawings of the new cover he was designing had been made and asking the plaintiff to keep him advised. The letter further stated, "This is also to confirm that we are to work out a commission arrangement before completion of negotiations with *customers of your development.*" (Emphasis supplied.)

On April 16, 1949, Kitterman, in behalf of National, wrote the plaintiff as follows:

"Please find enclosed our revised quotation No. 210 for Lemay Machine Company.

"This is also to confirm that we will pay you a commission of 5% on *this* account unless it is mutually agreed in writing that the 5% figure be changed to a different amount.

"Trusting that the above meets with your approval and that we may hear from you on the proposal very soon, we remain",

to which plaintiff replied on April 19th in part as follows:

"I received your letter of April 16, 1949 confirming our agreement of a 5% commission on all orders received from Lemay Machine Company. The enclosed quotations were delivered to Lemay and also to my contact with Reddi Wip. Before doing anything on these prices Sullentroop wants to wait on your sample and if it proves satisfactory they will place their orders with you. Incedentally Don, he wants you to quote on the other piece also. This deal seems pretty well in the bag and should mean quite a bit of cash to both of us, so get that sample in as soon as possible as that is the only thing holding up the orders."

On April 30th, Kitterman, for National, wrote to the plaintiff enclosing quotations for the Lemay cover and stating:

"I assume, that inasmuch as I did not receive a call from them, that Reddi-wip slowed it down. After delivering the quotations to Mr. Sul-

lentrup, I'd like to have a report as to the status of the job."

On May 3, 1949, plaintiff responded to Kitterman's letter, stating that Sullentrup of Lemay and his engineer were both sold on the cap Kitterman had designed but were having "a little difficulty" in selling Reddi-Wip. On May 4, 1949, plaintiff again wrote Kitterman to the effect that Sullentrup of Lemay still favored National but was having difficulty with Reddi-Wip, which he expected to have all ironed out. On June 14, 1949, plaintiff reported to Kitterman that he had made a contact with Reddi-Wip through a third party with whom he had agreed to share his commission.

On June 17, 1949, Kitterman, in behalf of National, wrote the plaintiff enclosing quotations for Reddi-Wip and suggesting that if the enclosed quotations were not satisfactory to Reddi-Wip, plaintiff try to sell them on the idea of two sources of supply. Kitterman testified that Higgins never advised National of the outcome of the quotation of June 17, 1949, and that plaintiff never subsequently wrote to Kitterman or ever attempted to communicate with him after his letter of June 14, 1949, as to what, if any, progress he was making with Reddi-Wip.

Witness Soffer, representing Reddi-Wip, confirmed the fact that Higgins, subsequent to June 17, 1949, did nothing to bring National Products back to the attention of Reddi-Wip and that National's quotations were not accepted by Reddi-Wip because "they were too high". Just a week after the plaintiff delivered National's quotations to Reddi-Wip he brought Reddi-Wip's attention to the Loma Plastic Company of Fort Worth, Texas, by introducing a Mr. Barnett, who came up from Fort Worth to meet them. Thereafter Barnett, in behalf of Loma Plastic Company, submitted to Reddi-Wip a quotation for the same type of plastic cap as was being considered by National. When asked why he brought Loma into the picture "to compete with your National Products Company", plaintiff replied, "Because I felt that I was free to do so", that he thought Reddi-

Wip "intended to split the business". Between July, 1949, and November, 1949, Reddi-Wip in considering plans for improving the cap and valve assembly employed Raymond Loewy, an industrial designer, to redesign them. In the meanwhile, plaintiff, on his own behalf and without the knowledge of National, undertook to have five models of cap designs made for Reddi-Wip at a St. Louis machine shop. These cap designs were submitted *directly* to Reddi-Wip for approval, but all were rejected.

In the latter part of July, 1949, Carl V. Rice, principal stockholder and vice president of the Missouri Die Casting Company at St. Louis, and plaintiff Higgins, who was also a sales representative of Missouri Die Casting Company, were discussing the Reddi-Wip business. Plaintiff informed Rice that he had not been able to make any progress with National Products' negotiations on the Reddi-Wip cover, the reason being that the prices quoted by Kitterman, for National Products, were entirely too high. Subsequently, but before the end of July, Rice was in the office of one Thurman Hill, an attorney in Washington, D. C. Hill happened to mention that he had a new client, the Reddi-Wip Company of St. Louis. Rice told Hill that a plastic company (National) in which his family had an interest had attempted to get some Reddi-Wip manufacturing business but had been unsuccessful and he asked Hill if he could get him another connection with or introduction to Reddi-Wip for National. Hill agreed and made arrangements whereby Rice and Kitterman obtained a direct appointment with Soffer, a Reddi-Wip representative; this conference was held at the Reddi-Wip plant at St. Louis on or about July 28th or 29th. Their efforts at this time to get business for National were not successful. In November of 1949, after the Loewy design had been completed, Soffer of Reddi-Wip called National and asked if Kitterman could come to St. Louis and talk with him. He explained that certain features of the Loewy design were not desirable and that he thought probably Kitterman

could help him develop an idea of his own as an addition to the Loewy design. The end result was that in December of 1949 National began manufacturing the new caps directly for Reddi-Wip.

The trial court, concluding that "plaintiff's right to compensation under the agreement plaintiff had with National was conditioned upon plaintiff's being the effective producing cause of developing Reddi-Wip as a customer for National," found that plaintiff did not develop Reddi-Wip as a customer and was not the efficient, procuring cause of any order National received from Reddi-Wip.

The trial court further found that upon plaintiff's failure to develop Reddi-Wip as a customer for National, plaintiff thereafter sought to develop and obtain Reddi-Wip's business for Loma, a competitor of National, and that, "in so doing plaintiff broke the continuity of any efforts on his part to develop Reddi-Wip as a customer for National".

We think the trial court correctly interpreted the law of Missouri as it is applicable herein. Recently this court, in Realty Investment Co., Inc., v. Armco Steel Corp., 8 Cir., 255 F.2d 323, 328, had occasion to consider the Missouri law as it affects the rights of a broker to receive a commission on the sale of property. Therein we stated:

> "The term 'procuring cause' refers to the cause originating a series of events which, without break of continuity, results in the accomplishment of the object of employment of the agent. Rogers v. McCune, 1955, Mo.App., 283 S.W.2d 872, 877, and cases there cited. The general rule of Missouri law as to the rights of a real estate broker who claims to have been the procuring cause of a sale of real estate is stated in Barnum v. Hutchens Metal Products, Inc., Mo.1953, 255 S.W.2d 807, 808:
>
> " 'It is the general rule that a real-estate broker is entitled to recover his commission on the sale of real estate if he shows himself to have been the procuring cause of the sale although the owner himself had finally consummated the sale. Of course, the rule is equally applicable whether the owner consummates the sale personally or through another broker. The owner cannot escape liability to a broker who is the procuring cause of a sale by employing another broker to consummate the transaction; and whether or not a broker is the procuring cause is ordinarily a question for the jury. Bowman v. Rahmoeller, 331 Mo. 868, 55 S.W.2d 453; Bell v. Kaiser, 50 Mo. 150; Studt v. Leiweke, Mo.App., 100 S.W.2d 30; Grether v. Di Franco, Mo.App., 178 S.W.2d 469; Earls v. Alsup, 237 Mo.App. 819, 176 S.W.2d 830.' "

In Rogers v. McCune, 1955, 283 S.W.2d 872, 877, the St. Louis Court of Appeals (Missouri) stated:

> "For an agent to recover a commission upon the sale of property of his principal it is not sufficient that his act is one of a chain of causes producing the contract—it must be the procuring and inducing cause. The terms 'procuring cause' and 'inducing cause' refer to the cause which originates a series of events which without break of continuity result in the accomplishment of the object of the employment of the agent. Williams v. Mashburn, Mo. App., 37 S.W.2d 478; Gamble v. Grether, 108 Mo.App. 340, 83 S.W. 306; Crain v. Miles, 154 Mo.App. 338, 134 S.W. 52; Kyle v. Kansas City Life Ins. Co., 356 Mo. 331, 201 S.W.2d 912; Ramsey v. West, 31 Mo.App. 676; F. H. & C. B. Gerhardt Real Estate Co. v. Marjorie Real Estate Co., 144 Mo.App. 620, 129 S.W. 419; Nooning v. Miller, 178 Mo.App. 297, 165 S.W. 1119; Real Estate Enterprises, Inc., v. Collins, Mo.App., 256 S.W.2d 286; Young v. Stecher Cooperage Works, 259 Mo. 215, 168 S.W. 611; Westerman v. Peer Inv. Co., 197 Mo.App. 278, 195 S.W. 78; Good v. Robinson, 194 Mo.App. 453, 184 S.W. 955."

In Real Estate Enterprises, Inc. v. Collins, 1953, 256 S.W.2d 286, 289, the St. Louis Court of Appeals (Missouri) said:

> "For one's services in such a matter to be the procuring cause of the sale, it is essential that his initial efforts in calling attention to the property shall have set in motion a series of events which, without a break in their continuity, and without interruption in the negotiations, eventually culminated in the sale. *But where there is a definite break in the continuity of the negotiations amounting to an abandonment of the deal, and new forces thereafter enter which bring about a renewal of the negotiations and themselves become the effective cause of the sale, the initial efforts may not then be regarded as the proximate procuring cause so as to be the foundation on which to predicate a right to a commission.* Young v. Stecher Cooperage Works, 259 Mo. 215, 168 S.W. 611; Westerman v. Peer Inv. Co., 197 Mo.App. 278, 195 S.W. 78; Good v. Robinson, 194 Mo.App. 453, 184 S.W. 955; Smith v. Allgier, 234 Mo.App. 392, 135 S.W.2d 43." (Emphasis supplied.)

In United Farm Agency v. Cook, 1955, 283 S.W.2d 6, 13, the Springfield Court of Appeals (Missouri) affirmed a judgment for recovery of a commission for selling real estate on the ground that "there is no evidence in the instant case that there ever was any break in the negotiation or abandonment of plaintiff's efforts in carrying such negotiations of sale to an ultimate conclusion."

 In the consideration of this appeal we must take that view of the evidence and accept such reasonable inferences therefrom as tend to support the conclusion of the trial court. So viewed, there is ample testimony to support such conclusion. The testimony indicates that the last time the plaintiff communicated with the defendants was June 14, 1949. Thereafter, for months, he failed to report to or get in touch with defendants, and failed to make any further effort to bring defendants back to the attention of Reddi-Wip. During such period he engaged in activities which could be, and were, construed as antagonistic to the interests of defendants by soliciting Reddi-Wip's business in behalf of the Loma Plastic Company, a competitor of defendants, and in addition thereto, without knowledge of the defendants or any communication to or from them, he had samples of plastic caps manufactured and submitted on his own behalf. These were rejected. This was substantial evidence of a "definite break in the continuity of the negotiations" and could be, and was, found by the trial court to have been an abandonment by plaintiff. The conclusion that new forces thereafter entered into the picture bringing about a renewal of negotiations and consummation of an agreement to manufacture the Loewy-designed caps is well substantiated. The Supreme Court of Missouri in Barnum v. Hutchens Metal Products, Inc., Mo.1953, 255 S.W.2d 807, 808, supra, pointed out that the question of whether a broker is the procuring cause is ordinarily one for the jury. Here the trial court sat in place of a jury and it was its prerogative, upon the disputed evidence introduced, to determine the ultimate facts.

In asking this court to reverse the district court and direct judgment for plaintiff, the plaintiff has, in effect, asserted two alternative contentions: First, that had this case been tried to a jury he would have been entitled to a directed verdict; second, that this court should reject the findings of the trial court and try the case *de novo* on the record. There is complete lack of merit in each contention. As to the first, there was substantial evidence sufficient to produce a disputed fact question which required determination by the trial court, whether it be with or without a jury. As to the second, it has already been demonstrated that this court may not substitute its

judgment for that of the trial court and that the latter's findings and conclusions may not be set aside unless clearly erroneous or induced by an incorrect view of the law. We do not so find.

Affirmed.